E-FILED
Thursday, 27 May, 2021 05:49:44 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| H.K. and J.C., through their father and legal guardian CLINTON FARWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | No. 1:21-cv-01122-SLD-JEH<br><br>**Oral Argument Requested** |

**GOOGLE LLC'S MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Google Workspace for Education .......... 2

B. The Children's Online Privacy Protection Act .......... 3

C. The Biometric Information Privacy Act .......... 5

D. Summary of Plaintiffs' Allegations .......... 6

III. LEGAL STANDARD .......... 7

IV. ARGUMENT .......... 7

A. COPPA Preempts Plaintiffs' Claim .......... 7

1. COPPA expressly preempts Plaintiffs' BIPA claim. .......... 8

2. COPPA implicitly preempts Plaintiffs' claim .......... 12

B. Plaintiffs Fail to Plead Facts Stating a Claim Under BIPA .......... 13

V. CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ....................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*Barton v. Swan Surfaces, LLC.*,
No. 20-CV-499-SPM, 2021 WL 793983 (S.D. Ill. Mar. 2, 2021)....................11

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ....................7

*Clinton Farwell v. Google LLC*,
Case No. 5:20-cv-02257, ECF Nos. 1, 14 (N.D. Cal. Apr. 2, 2020) ....................7

*Cothron v. White Castle Sys., Inc.*,
467 F. Supp. 3d 604 (N.D. Ill. 2020)....................15

*Cothron v. White Castle System, Inc.*,
No. 20-3203 (Nov. 9, 2020)....................14

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)....................8

*Effex Cap., LLC v. Nat'l Futures Ass'n*,
933 F.3d 882 (7th Cir. 2019) ....................8, 12

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992)....................8

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000)....................13

*Goplin v. WeConnect, Inc.*,
893 F.3d 488 (7th Cir. 2018) ....................17

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003)....................13

*Healy v. Beer Institute*,
491 U.S. 324 (1989)....................17

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ....................14, 18

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Heidelberg v. Manias*,
No. 18-CV-01161-SLD-JEH, 2019 WL 4862069 (C.D. Ill. Mar. 26, 2019)............................7

*Hubbard v. Google LLC*,
No. 19-CV-07016-BLF, 2020 WL 7495084 (N.D. Cal. Dec. 21, 2020) ......................... passim

*Int'l Paper Co. v. Ouellette*,
479 U.S. 481 (1987)..........................................................................................................12

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001)............................................................................................................8

*Manigault-Johnson v. Google, Inc.*,
No. 18-cv-1032, 2019 WL 3006646 (D.S.C. Mar. 32, 2019)............................................9, 11

*Marion v. Ring Container Techs., LLC*,
No. 19-L-89, Appeal No. 3-20-0184 (3d Dist. July 21, 2020) ...............................................14

*Miller v. Sw. Airlines Co.*,
926 F.3d 898 (7th Cir. 2019) ..............................................................................................11

*Monroy v. Shutterfly, Inc.*,
2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ........................................................................17

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019)....................................................................................16

*New Mexico v. Google, LLC*,
489 F. Supp. 3d 1254 (D.N.M. 2020)...................................................................................12

*New Mexico v. Tiny Lab Prods.*,
No. 18-854 MV/JFR, 2020 WL 2065275 (D.N.M. Apr. 29, 2020).........................................12

*Perez v. Nidek Co.*,
711 F.3d 1109 (9th Cir. 2013) ..............................................................................................13

*Puerto Rico v. Franklin California Tax-Free Tr.*,
136 S. Ct. 1938 (2016)..........................................................................................................8

*Rivera v. Google, Inc.*,
238 F. Supp. 3d 998 (N.D. Ill. 2018)....................................................................................15

*Robertson v. Hostmark Hosp. Grp., Inc.*,
Case No. 18-CH-5194, slip op. (Cir. Ct. Cook Cnty., Jan. 27, 2020).....................................14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Saccameno v. Ocwen Loan Servicing, LLC*,
372 F. Supp. 3d 609 (N.D. Ill. 2019) ....................3

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
950 F.3d 911 (7th Cir. 2020) ....................12

*Smith v. Top Die Casting Co.*,
slip op. (Cir. Ct. Winnebago Cnty., Mar. 12, 2020) ....................14

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ....................7, 16, 17

*Tims v. Black Horse Carriers, Inc.*,
No. 19-CH-03522, Appeal No. 1-20-0563 (1st Dist. Apr. 23, 2020) ....................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................16

*Tobey v. Chibucos*,
890 F.3d 634 (7th Cir. 2018) ....................7

*Umland v. PLANCO Fin. Servs., Inc.*,
542 F.3d 59 (3d Cir. 2008)....................13

*Watson v. Legacy Healthcare Fin. Servs., LLC*,
No. 19-CH-3425, slip op. (Cir. Ct. Cook Cnty., June 10, 2020) ....................14

**STATUTES**

735 ILCS 5/13-201 ....................14

740 ILCS 14/1, *et seq*.................... passim

15 U.S.C. §§ 6501, *et seq*.................... passim

29 U.S.C. § 152, *et seq*.....................11

45 U.S.C. Ch. 8 ....................11

**RULES**

Fed. R. Civ. P. 12(b)(6)....................1, 7

Fed. R. Civ. P. 41(a) ....................7

LR 7.1(A)(2) ....................2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**REGULATIONS**

16 C.F.R. § 312.1, *et seq.* ....................3, 4, 9, 10

64 Fed. Reg. 59888-01 (Nov. 3, 1999) ....................9, 13

**OTHER AUTHORITIES**

Christine S. Wilson, Comm'r, Fed. Trade Comm'n, *Remarks at the Future of Privacy Forum* (Feb. 6, 2020), https://www.ftc.gov/public-statements/2020/02/remarks-commissioner-christine-s-wilson-future-privacy-forum(last visited May 26, 2021)....................4

Fed. Trade Comm'n, Complying with COPPA: Frequently Asked Questions ("COPPA FAQ"), N.1, (July 2020), https://www.ftc.gov/tips-advice/business-center/guidance/complying-coppa-frequently-asked-questions-0#N.%20COPPA%20AND%20SCHOOLS (last visited May 4, 2021)....................4, 5, 11

**MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Google LLC hereby moves the Court for an order dismissing Plaintiffs' Complaint in its entirety. This Motion is based on the Memorandum of Law herein; the Declaration of Samuel Wilson ("Wilson Decl.") and the Exhibits attached thereto, which are incorporated by reference in the Complaint or are subject to judicial notice; the pleadings and papers on file in this action; any argument and evidence to be presented at the hearing on this Motion; and any other matters that may properly come before the Court.

## I. INTRODUCTION

Plaintiffs H.K. and J.C., represented by their father, Clinton Farwell ("Plaintiffs"), seek to leverage the private right of action and generous liquidated damages available under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*., to sue Google for conduct that is exclusively regulated under federal law. Plaintiffs allege that Google failed to provide notice and obtain parental consent prior to the alleged collection of Plaintiffs' biometrics, while Plaintiffs were using Google applications provided by Plaintiffs' elementary school. Plaintiffs' claim fails for two independent reasons, each requiring dismissal.

***First***, the online collection of personal information from children under the age of 13, including collection in the educational context, is federally regulated by the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501, *et seq*. COPPA expressly preempts state laws, including BIPA, that treat the same conduct differently than COPPA does—including laws, such as BIPA, that impose private liability for regulated conduct. COPPA also impliedly preempts BIPA because allowing Plaintiffs to privately enforce their BIPA claim would upset the carefully balanced enforcement framework enacted by Congress.

***Second***, the Complaint fails because it does not set forth sufficient facts to render Plaintiffs' allegations plausible. Specifically, Plaintiffs do not allege any facts to plausibly suggest that the data that Google collects through their schools' software applications constitutes Biometric Data[1] within the meaning of BIPA or that Google maintains a "vast database" of student identities to which it ties that data. *See, e.g.*, Compl. ¶ 36. Plaintiffs sprinkle the Complaint with jargon that mimics the language of the statute, such as "scans of face geometry" and "voiceprints," but never explain the basis upon which they claim that Google collects their Biometric Data.

Because Plaintiffs' claim is both preempted and insufficiently pled, the Complaint should be dismissed in its entirety. Pursuant to Local Rule 7.1(A)(2), Google seeks oral argument to further explain the bases for its motion and address any questions from the Court.

## II. BACKGROUND

### A. Google Workspace for Education

Some elementary schools in Illinois offer students Google Chromebook laptops for use at school. Compl. ¶¶ 23, 34-35. Schools can use these Chromebooks with a suite of Google software applications called Google Workspace for Education ("GWFE").[2] GWFE includes word processing and collaboration software such as Classroom (assignment tracking), Drive (file storage), Docs (word processing), Groups (communication and collaboration), Sheets (spreadsheets), and Meet/Chat (audio and video conferencing).[3] *Id.*; *see also* Wilson Decl., Ex. A

[1] For convenience in this motion, Google uses "Biometric Data" to refer to "biometric information" and "biometric identifiers" as defined by BIPA. 740 ILCS 14/10.
[2] GWFE is referred to in the Complaint by its former name, G Suite for Education.
[3] Google Meet was formerly called Google Talk, and Google Chat was formerly called Google Hangouts. In this briefing, Google refers to these applications by their current names.

("Ex. A") at 1.[4] These software applications allow teachers and students to collaborate on, share, send, and receive assignments digitally and remotely. Compl. ¶¶ 23-24; Ex. A at 1-2. Google does not serve ads in these GWFE applications or in Google Search when students are logged in with their GWFE accounts. Ex. A at 2.

Like most laptops, Chromebooks are equipped with cameras and microphones. Compl. ¶ 35. The video conferencing features of the GWFE Meet application utilize both the cameras and microphones to enable students and teachers to hear and see each other in real time. *See* Compl. ¶¶ 24, 34-35; Ex. A at 1.

Google notifies schools that use of GWFE is subject to COPPA. Ex. A at 2. Google also contractually requires that schools using GWFE obtain parental consent for its use. *Id.*

**B. The Children's Online Privacy Protection Act**

Congress enacted COPPA in 1998 to enhance parental control over children's online activities and protect children's privacy. *See* 15 U.S.C. §§ 6501, *et seq*. COPPA and its implementing regulation (the "COPPA Rule") promulgated by the Federal Trade Commission ("FTC") create a detailed regulatory and remedial scheme governing the collection and use of personal information about minors under the age of 13. *See id*. §§ 6501-6502; 16 C.F.R. § 312.1, *et seq.* They require the operators of websites and other online services directed to children to, among other things, post a publicly available policy providing information about their practices regarding the collection of personal information from children, provide notice of those practices

[4] Plaintiffs cite Ex. A in the Complaint. *See* Compl. ¶ 24, n.8. It is thus incorporated by reference because it is "referred to in the plaintiff[s'] complaint and [is] central to [their] claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Additionally, it is subject to judicial notice because it is hosted on Google's website and its authenticity is not in dispute. Wilson Decl. ¶¶ 2-3; *see, e.g.*, *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 632 n.13 (N.D. Ill. 2019).

to parents prior to collection, obtain verifiable parental consent, and delete any collected personal information in a timely manner. 16 C.F.R. §§ 312.2, 312.4, 312.5, 312.10.

Congress placed the enforcement of this regime solely in the hands of the government. *See* 15 U.S.C. §§ 6502-6205. To this end, COPPA does not grant a private right of action. *See id.* And it includes an express preemption clause, stating:

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

15 U.S.C. § 6502(d).

The FTC is the driver of the COPPA regime, operating as both rule maker and lead enforcer. 15 U.S.C. §§ 6502(b)-(c) (FTC to issue implementing regulations); *id.* § 6504(a)-(b) (states must give notice to the FTC of any action, and the FTC has the right to intervene in state action); *see also Hubbard v. Google LLC*, No. 19-cv-07016, 2020 WL 7495084, at *6 (N.D. Cal. Dec. 21, 2020) ("[T]here is a detailed remedial scheme in [COPPA], as referenced by the preemption clause, giving enforcement authority primarily to the FTC and carving out a cooperative role for state attorneys general."). This framework allows "expert agencies" "to establish a sound and consistent national policy." *See* Christine S. Wilson, Comm'r, Fed. Trade Comm'n, Remarks at the Future of Privacy Forum, 15 (Feb. 6, 2020), https://www.ftc.gov/public-statements/2020/02/remarks-commissioner-christine-s-wilson-future-privacy-forum(last visited May 26, 2021).

The FTC has made clear that COPPA applies in schools and has issued guidance specifying how schools may provide notice and obtain consent on parents' behalf. Fed. Trade Comm'n, Complying with COPPA: Frequently Asked Questions ("COPPA FAQ"), N.1, (July 2020), https://www.ftc.gov/tips-advice/business-center/guidance/complying-coppa-frequently-

asked-questions-0#N.%20COPPA%20AND%20SCHOOLS (last visited May 26, 2021). This guidance specifies that schools that contract with third-party online operators "may act as the parent's agent and can consent under COPPA to the collection of kids' information on the parent's behalf." *Id.* It makes clear that *operators* fulfill their COPPA obligations by providing schools with direct notice. *Id.* Schools, in turn, may provide notice to parents of the online services for which they have consented on behalf of the parent. *Id.*; *see also id.* N.4 ("As a best practice, the school should consider providing parents with a notice of the websites and online services whose collection it has consented to on behalf of the parent under COPPA.").

### C. The Biometric Information Privacy Act

BIPA was enacted several years after COPPA, in 2008, to facilitate the responsible development and use of biometric technology. 740 ILCS 14/5(a), (b), (d), (e). To that end, BIPA imposes certain requirements for the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id*. § 5(g). BIPA defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and defines "biometric information" to mean "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. § 10.

BIPA requires that a private entity "in possession of" Biometric Data "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying" the Biometric Data. *Id*. § 15(a). BIPA also provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" Biometric Data unless it first obtains "informed written consent" from the subject or the subject's "legally authorized representative." *Id*. §§ 10, 15(b).

"Any person aggrieved" by a violation of BIPA may bring a private right of action for actual damages or liquidated damages of $1,000 per violation (for negligent violations) or $5,000 per violation (for "intentional[]" or "reckless[]" violations), plus "reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses." *Id*. § 20(1), (2), (3). Over 1,100 BIPA lawsuits have been filed since 2015.

**D. Summary of Plaintiffs' Allegations**

Plaintiffs claim that Google violated BIPA by collecting Plaintiffs' Biometric Data through GWFE without first providing public notice of and complying with data retention and deletion policies or notifying Plaintiffs' parents of and obtaining consent to its collection practices. Compl. ¶¶ 35-45. Specifically, Plaintiffs claim that Google recorded Plaintiffs' voices and "imaged their faces" when unspecified features of GWFE "required" them to use the Chromebook's microphone and camera. *Id.* ¶ 35. Then Google allegedly "extracted, collected, stored, and cataloged each of their 'voiceprints'" and "their 'scans of face geometry.'" *Id.* ¶ 36. Next, Plaintiffs contend that Google linked Plaintiffs' Biometric Data to "its vast database of personally identifying biometric data" in order to identify who was using its platform and also to "better train the functionality of the various features available on its platform." *Id.* ¶¶ 36-37. And finally, Plaintiffs claim that Google used Plaintiffs' voiceprints and scans of face geometry "to recognize Plaintiffs' gender, age, and location." *Id.* ¶ 38.

Plaintiffs bring a single cause of action under BIPA. *Id*. ¶¶ 49-59. The substance of the allegations indicates that this cause of action is premised on alleged violations of section 15(a), *id.* ¶ 57, and section 15(b), *id.* ¶¶ 54-56.

This is not the first lawsuit filed against Google by Plaintiffs for BIPA violations involving GWFE. On April 2, 2020, Plaintiffs, represented by the same counsel, filed suit against Google in the Northern District of California (the "California Case"), which they subsequently

dismissed under Federal Rule of Civil Procedure 41(a). *See* Wilson Decl., Ex. B ("Ex. B"); *H.K. and J.C., through their father and legal guardian Clinton Farwell v. Google LLC*, Case No. 5:20-cv-02257, ECF Nos. 1, 14 (N.D. Cal. Apr. 2, 2020). The allegations in the California Case are nearly identical to the allegations here. *See* Wilson Decl., Ex. C (redline of the two complaints). The primary difference between the two complaints is that, in the California Case, Plaintiffs alleged that Google violated COPPA in addition to BIPA. Ex. B ¶¶ 76-92.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests whether a complaint "state[s] a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). This requires a plaintiff to "provid[e] some specific facts to ground [her] legal claims," *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009), and to "give enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Courts should not accept "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (cleaned up). Plaintiffs may not "merely parrot the statutory language of the claims that they are pleading." *Brooks*, 578 F.3d at 581. Dismissal based upon an affirmative defense is appropriate "when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Heidelberg v. Manias*, No. 18-cv-01161, 2019 WL 4862069, at *5 (C.D. Ill. Mar. 26, 2019).

## IV. ARGUMENT

### A. COPPA Preempts Plaintiffs' Claim

Plaintiffs fail to state a claim for which relief can be granted because COPPA regulates the conduct alleged here and unambiguously preempts state laws, such as BIPA.

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citations omitted). "Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (citation and quotation marks omitted). Where a statute contains an express preemption clause, the analysis "begins with the language of the statute." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 542 (2001). In such circumstances, courts must "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (citation and quotation marks omitted). Implied preemption arises "where state law would be an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 893 (7th Cir. 2019) (citation omitted).

As shown below, Plaintiffs' claim is both expressly and impliedly preempted by COPPA.

**1. COPPA expressly preempts Plaintiffs' BIPA claim.**

Applying an express preemption clause "begins with the language of the statute." *Lorillard*, 533 U.S. at 542. COPPA's express preemption clause is robust and unambiguous:

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

15 U.S.C. § 6502(d). COPPA's enforcement scheme is thus "clear, detailed, and does not leave room for state laws to impose additional liability." *Hubbard*, 2020 WL 7495084, at *6 (dismissing state law claims for intrusion upon seclusion, unjust enrichment, and violation of state consumer protection statutes as preempted by COPPA). COPPA preemption applies if two

conditions are met: (1) the conduct at issue is regulated by COPPA, and (2) the state law imposes liability that is different from how COPPA "treat[s]" that conduct under "this section." 15 U.S.C. § 6502(d); *see also Hubbard*, 2020 WL 7495084, at *6; *Manigault-Johnson v. Google, Inc.*, No. 18-cv-1032, 2019 WL 3006646, at *6 (D.S.C. Mar. 32, 2019) (reasoning that COPPA preempted a claim seeking to impose liability for conduct falling within its scope). Here, both conditions are met.

***First***, the conduct at issue is regulated by COPPA. COPPA regulates (1) the collection of personal information (2) from children under the age of 13 (3) by online operators, including in schools. 15 U.S.C. §§ 6501(1), (2), 6502(a)(1); 64 Fed. Reg. 59888-01, 59903 (Nov. 3, 1999) ("To ensure effective implementation of the [COPPA] Rule, the [FTC] also intends to provide guidance to the educational community regarding the Rule's privacy protections."). The voice snippets and images that Plaintiffs allege Google collected through Chromebooks constitute "personal information" under COPPA. 16 C.F.R. § 312.2 (defining "personal information" to include the "photograph, video, or audio file where such file contains a child's image or voice"). Plaintiffs are both under the age of 13. *See* Compl. ¶ 9 (alleging Plaintiffs are in elementary school); *see also* Ex. B ¶ 10 ("[Plaintiffs] are still under the age of 13 today."). And, as alleged, Google is an "operator of a website or online service directed to children." *See* Compl. ¶ 23 (alleging that Google provides "a cloud-based service used by young students all across the country"); 15 U.S.C. § 6501(2) (defining "operator" as a person who operates "an online service" and "collects or maintains personal information from . . . the users of . . .[the] online service"); *id.* § 6501(10)(A) (defining "website or online service directed to children" as

including the portion of online services targeted to children). Thus the BIPA violation that Plaintiffs allege is entirely encompassed within the scope of COPPA's regulatory framework.[5]

***Second***, BIPA imposes liability that is different from how COPPA "treat[s]" that conduct under "this section." 15 U.S.C. § 6502(d). Plaintiffs contend that Google violated BIPA by failing to provide public notice of its policies relating to the retention and deletion of Biometric Data, Compl. ¶ 57; failing to comply with data retention and deletion policies, Compl. ¶ 17; failing to provide direct notice to their parents, Compl. ¶ 56; and failing to obtain parental consent, Compl. ¶ 55. But all of these BIPA requirements differ from the analogous requirements for collecting and processing personal information under COPPA. *Compare* 16 C.F.R. § 312.4(d) (requiring operators to "post a prominent and clearly labeled link to an online notice of its information practices with regard to children"), *with* 740 ILCS 14/15(a) (requiring only a "publicly available policy" (online or offline) that is not specific to children); *compare* 16 C.F.R. § 312.10 (allowing retention for "only as long as is reasonably necessary" and establishing deletion requirements), *with* 740 ILCS 14/15(a) (requiring permanent destruction within three years of the data subject's last interaction with the entity collecting the Biometric Data); *compare* COPPA FAQ N.1 (allowing online operators to provide notice to schools, rather than parents, in educational settings), *with* 740 ILCS 14/15(b)(1)-(2) (requiring direct notice to data subjects or their "legally authorized representatives"); *compare* COPPA FAQ N.1 (allowing schools to act

---

[5] In the California Case, Plaintiffs explicitly took the position that their BIPA claim was identical to the alleged COPPA violation. *See, e.g.*, Ex. B ¶ 1 ("Google . . . collect[ed], stor[ed], and us[ed] their . . . [Biometric Data] . . . without . . . [the] requisite consent of their legal guardians – in direct violation of both BIPA and COPPA."); *id.* ¶ 5 ("Google has managed to violate both . . . COPPA and BIPA . . . at the same time"); *id.* ¶ 43 ("[T]he 'biometric identifiers' and 'biometric information' Google collected . . . constitute 'personally identifiable information' within the meaning of COPPA."); *id.* ¶ 45 ("[B]oth BIPA and COPPA clearly prohibit[] what Google has done.").

as parental agents and provide consent on behalf of parents), *with* 740 ILCS 14/15(b)(3) (requiring consent from data subjects or their "legally authorized representatives").

Additionally, the way that COPPA treats violations of its substantive provisions—through enforcement by the FTC and state attorneys general—differs wildly from BIPA's private enforcement scheme, which has engendered over 1,100 class actions in six years. This difference alone is sufficient to trigger COPPA's express preemption clause. *See Hubbard*, 2020 WL 7495084, at *6 (dismissing complaint based on COPPA preemption because COPPA does not permit private enforcement of its provisions); *Manigault-Johnson*, 2019 WL 3006646, at *6 (Congress "assigned exclusive enforcement of COPPA to the Federal Trade Commission and state attorneys general."). This result is also consistent with multiple courts' application of other federal laws to preempt BIPA claims. *See, e.g.*, *Miller v. Sw. Airlines Co*., 926 F.3d 898, 904 (7th Cir. 2019) (finding BIPA preempted by Railway Labor Act); *Barton v. Swan Surfaces, LLC*., No. 20-CV-499-SPM, 2021 WL 793983, at *6 (S.D. Ill. Mar. 2, 2021) (finding BIPA preempted by Labor Management Relations Act).

Because Congress chose to "treat" the activities and actions regulated by COPPA as falling within the exclusive enforcement purview of the FTC and state attorneys general, and this treatment is different from BIPA's enforcement scheme, COPPA preempts BIPA. *See Hubbard*, 2020 WL 7495084, at *6 ("The Court finds that allowing private plaintiffs to bring suits for violations of conduct regulated by COPPA, even styled in the form of state law claims, with no obligation to cooperate with the FTC, inconsistent with the treatment of COPPA violations as outlined in the COPPA statute.").[6]

[6] COPPA preemption of Plaintiffs' claim does not deprive states of their power to protect the privacy of children. BIPA would still impose liability for failures to provide notice and obtain consent with respect to the *off*line collection of Biometric Data of children under the age of 13.

Because Plaintiffs have pled conduct that is squarely regulated by COPPA and attempted to repackage it as a BIPA claim to create a private right of action, the claim is preempted and should be dismissed with prejudice. *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 919 (7th Cir. 2020) (affirming dismissal with prejudice where "the defects in these cases cannot be corrected").

**2. COPPA implicitly preempts Plaintiffs' claim.**

In addition to expressly preempting Plaintiffs' BIPA claim, COPPA also implicitly preempts it because the BIPA claim interferes with COPPA's carefully built framework of flexible and informal regulation backed by federal and state enforcement. *Effex*, 933 F.3d at 893. "A state law . . . is pre-empted if it interferes with the methods by which the federal statute was designed to reach [its] goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987). That the federal law and state law share the same "ultimate goal" is irrelevant to the preemption analysis. *See id.* Where a state law—including the enforcement mechanisms or remedies available thereunder—would interfere with a federal enforcement regime, that law is preempted. *See, e.g.*, *Geier v. Am. Honda Motor Co*., 529 U.S. 861, 872 (2000) ("[C]ommon-law actions that 'actually conflict' with federal regulations . . . would take from those who would enforce a federal law the very ability to achieve the law's congressionally mandated objectives."); *Perez v. Nidek Co*., 711

---

And state attorneys general could bring state law claims as part of a COPPA enforcement action. For example, in *New Mexico, ex rel. Balderas v. Google, LLC*, the state attorney general brought a COPPA enforcement action against Google alleging that GWFE violates COPPA. 489 F. Supp. 3d 1254 (D.N.M. 2020), *appeal filed sub nom., Balderas v. Google*, No. 20-2172 (10th Cir. Nov. 30, 2020). Ultimately that court dismissed the action because it found that schools using GWFE had served as the "agent and intermediary" in the notice-and-consent regime and had provided Google with the requisite authorization. *Id.* at 1262; *see also New Mexico, ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1121 (D.N.M. 2020) (finding state law claims brought by state attorney general not preempted by COPPA); *see also Hubbard*, 2020 WL 7495084, at *6-7 (distinguishing *Tiny Labs* based on the fact that the attorney general, not a private plaintiff, sought to enforce conduct regulated by COPPA).

F.3d 1109, 1119 (9th Cir. 2013) ("[The plaintiff's] fraud by omission claim is impliedly preempted because it conflicts with the FDCA's enforcement scheme."); *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 65 (3d Cir. 2008) (state law claims preempted where they "interfere with the IRS's administrative scheme"); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) ("[P]laintiffs' state-law claims are indirect attempts at privately enforcing" the federal statute and "would interfere with the implementation of that scheme.").

Here, allowing Plaintiffs to proceed with their claim would upend COPPA's comprehensive and intentional enforcement framework. *See Hubbard*, 2020 WL 7495084, at *6 ("Congress was clear when it decided how violations of COPPA should be treated."). The conduct giving rise to Plaintiffs' claim is entirely contained within COPPA's scope, so limiting enforcement to the FTC and state attorneys general—as Congress explicitly intended—is necessary to preserve the FTC's statutorily mandated obligation to promote self-regulation through incentives and its efforts to "provide guidance" to the industry "[t]o ensure effective implementation of" COPPA. *See* 15 U.S.C. 6503(b)(1); 64 Fed. Reg. 59888, 59903. Private enforcement of COPPA destroys any incentive for the industry to engage in self-regulation and deprives the FTC of its regulatory leverage. Private actions—brought outside of the FTC's supervision—interfere with the agency's ability to implement and enforce a uniform but dynamic policy protecting children's privacy online in the face of changing technology. Accordingly, COPPA implicitly preempts Plaintiffs' claim. The Court should dismiss the Complaint with prejudice.

**B. Plaintiffs Fail to Plead Facts Stating a Claim Under BIPA**

Even if Plaintiffs' claim was not preempted (it is), the Complaint nevertheless fails to state a claim for relief. The Complaint merely restates BIPA's statutory language with a varnish of technospeak and alleges no facts that would render plausible the legal conclusions at the heart

of Plaintiffs' claims. In fact, Plaintiffs' only factual allegations with respect to the alleged collection and possession of Biometric Data are that one or more applications in GWFE required them, at times, to use the cameras and microphones on their Chromebooks.[7] Compl. ¶ 35. These facts are insufficient to allege the collection of Biometric Data and do not state a claim under BIPA. *Compare, e.g.*, *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966, 969 (N.D. Ill. 2020) (dismissing BIPA section 15(a) and (b) claim where the plaintiff "repeatedly allege[d] that [the defendant] 'collected' his biometric data without alleging how, when, or any other factual detail," and dismissing BIPA section 15(d) "for [the] independent" reason that the plaintiff failed to allege facts that "triggered his suspicion" of improper disclosure), *with Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 618 (N.D. Ill. 2020) (finding well-pled section 15(d) claim where the complaint's description of "[t]he known involvement of a specific third party in the fingerprint-based system provides a basis to suspect 'that [White Castle] disseminated the biometric data at issue'").

[7] Plaintiffs do not even allege when Google supposedly first collected their Biometric Data—a significant omission because their claim may well be barred by the statute of limitations. Several trial courts have held that BIPA claims accrue with the first alleged collection. *See, e.g.*, Order, *Watson v. Legacy Healthcare Fin. Servs., LLC*, No. 19-CH-3425, slip op. at 3 (Cir. Ct. Cook Cnty., June 10, 2020) (Wilson Decl., Ex. D); Memorandum of Decision and Order, *Smith v. Top Die Casting Co.*, No. 2019-L-248, slip op. at 3 (Cir. Ct. Winnebago Cnty., Mar. 12, 2020) (Wilson Decl., Ex. E)); Memorandum & Order, *Robertson v. Hostmark Hosp. Grp., Inc.*, Case No. 18-CH-5194, slip op. at 4 (Cir. Ct. Cook Cnty., Jan. 27, 2020) (Wilson Decl., Ex. F). That question is currently on appeal to the Seventh Circuit. *Cothron v. White Castle Sys., Inc.*, No. 20-3203 (Nov. 9, 2020). And while BIPA does not provide a statute of limitations, Illinois law provides that privacy tort claims fall within a one-year limitations period. *See* 735 ILCS 5/13-201. The question of BIPA's statute of limitations has been certified for appeal by the First and Third District Appellate Courts in *Tims v. Black Horse Carriers, Inc.*, No. 19-CH-03522, Appeal No. 1-20-0563 (1st Dist. Apr. 23, 2020), and in *Marion v. Ring Container Techs., LLC*, No. 19-L-89, Appeal No. 3-20-0184 (3d Dist. July 21, 2020). Because Plaintiffs filed the California Case on April 2, 2020, it is likely that Plaintiffs first used GWFE more than a year prior to filing the Complaint in this litigation. Google reserves the right to argue that their claims are time-barred or to request that the Court stay the case pending these appeals.

Rather than plead allegations that are plausible, Plaintiffs parrot the statutory text. They assert that Google collected their "voiceprints," *see* Compl. ¶ 36, but they do not allege any facts that support this legal conclusion, *see* 740 ILCS 14/10 ("'Biometric identifier' means a . . . voiceprint"). And Plaintiffs' contentions that Google "records the acoustic details and characteristics of their voices," Compl. ¶ 27, and that GWFE "includ[ed] features . . . that required Plaintiffs to speak into the laptop's audio recording device," Compl. ¶ 35, add no substance or plausibility to the allegation that Biometric Data is at issue. The Complaint fails to explain how this alleged recording is any different from a normal audio recording of Plaintiffs' voices, which clearly does not trigger BIPA. *See Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1097 (N.D. Ill. 2018) ("record[ing] a person's voice without generating a voiceprint" is not a violation of BIPA).

Similarly, Plaintiffs baldly assert that Google collected their "scans of face geometry," Compl. ¶ 36, but again, they merely copy and paste BIPA's text into their Complaint, *see* 740 ILCS 14/10 ("'Biometric identifier' means a . . . scan of . . . face geometry."). Their assertion that Google "scans and images the geometry of their faces, including the contours of their faces and the distances between certain localized facial points, such as the distances between the eyes and noses and ears," Compl. ¶¶ 27, 36, layers jargon on top of the statutory language. But this allegation still lacks any supporting factual allegations to explain on what basis Plaintiffs plausibly believe this to be true. *See Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (dismissing section 15(d) claim as based on "speculative allegations" where the plaintiff "ha[d] not pleaded sufficient factual allegations that plausibly suggest that Kronos disclosed or distributed her data to a third party"). Without such allegations, Plaintiffs fail to allege how this supposed scanning and imaging turns mere photographs and video, *see* Compl.

¶ 35 (describing features that used "the laptop's camera" to "image[] their faces") into actionable "scans of . . . face geometry," *see* 740 ILCS 14/10 ("Biometric identifiers do not include . . . photographs."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007) (holding that allegations of conspiracy were insufficient where facts alleged were at least equally consistent with law-abiding behavior). Plaintiffs need more than jargon to state a viable claim.

In addition to parroting the language of the statute, Plaintiffs baldly claim, without explanation, that Google maintains a "vast database" of Biometric Data to "track" schoolchildren. *See, e.g.*, Compl. ¶¶ 28-29 (tracking and "vast database"); ¶¶ 6, 36 ("vast database"). These allegations should be disregarded as conclusory for failing to "give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. As to the alleged "vast database," Plaintiffs allege no facts that support an inference that this database exists. The way in which Google acquired the alleged "vast database" is also implausible. Plaintiffs contend that Google "match[ed]" the Biometric Data allegedly collected through GWFE with "the voiceprints or face templates previously collected from the Plaintiffs that are stored in its database and linked to the Plaintiff's identity." Compl. ¶ 37 (emphasis added). However, Plaintiffs plead no facts describing when or how Google "previously collected" their Biometric Data, how Google allegedly used this Biometric Data to identify them, or how this database is allegedly able to "link" the Biometric Data to Plaintiffs' identity.

As to tracking, the document Plaintiffs incorporate by reference establishes that "there are no ads in G Suite for Education core services and [Google] do[es] not collect or use student data for advertising purposes or create advertising profiles." Ex. A at 2. Given this statement, it is not plausible that Google would "track" students in the manner alleged in the Complaint. Plaintiffs' ominous allegations of "vast databases" and "tracking" require more to "hold

together."[8] *Swanson*, 614 F.3d at 404; *see also Goplin v. WeConnect, Inc.*, 893 F.3d 488, 490-91 (7th Cir. 2018) (affidavit was "conclusory" when the party's "own website" undermined the conclusory statements in the affidavit).

Finally, Plaintiffs' assertions about Google Photos and FaceNet (Compl. ¶ 21) do not support the allegations in the Complaint. Plaintiffs fail to tie those disparate allegations to any other aspect of the Complaint: Plaintiffs do not allege that they used Google Photos, that it was made available to them as an application within GWFE, or that FaceNet was otherwise used in their GWFE accounts. *See* Compl. ¶¶ 34-43 (describing GWFE services yet failing to mention any incorporation of Google Photos or use of FaceNet); Ex. A at 1 (Google Photos not listed as a GWFE application).

Like the complaints in *Heard*, the Complaint here consists only of legal conclusions and recitations of BIPA's text. The Court should dismiss Plaintiffs' BIPA claim for this reason too.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss Plaintiffs' Complaint.

---

[8] Plaintiffs allege that Google "match[es]" or "link[s]" their Biometric Data to their identity *after* Google allegedly collects the Biometric Data. *See* Compl. ¶¶ 35-37. Even if Plaintiffs could allege facts rendering their BIPA claim plausible, this alleged timeline would mean that Google could not know the identity or location of any student before any voiceprint or face scan were created, and therefore, students under 13 in Illinois could not be excluded from the alleged collection of Biometric Data. Such a claim, if pled, would effectively apply BIPA beyond the borders of Illinois, in contravention to that state's legislature and the dormant commerce clause. *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017) ("BIPA does not apply extraterritorially."); *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989) (If "the practical effect of the regulation is to control conduct beyond the boundaries of the State," the dormant commerce clause renders it invalid.). Google reserves the right to raise these arguments at a later date if Plaintiffs plead facts sufficient to state a claim under BIPA.

Dated: May 27, 2021

Respectfully submitted,

By: s/ Bobbie Wilson

Bobbie Wilson, Lead Counsel
Sunita Bali
Samuel Wilson
PERKINS COIE LLP
505 Howard St., Suite 1000
San Francisco, CA 94015-3204
Telephone: 415.344.7000
Email: BWilson@perkinscoie.com
Email: SBali@perkinscoie.com
Email: SWilson@perkinscoie.com

Kathleen A. Stetsko
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: 312.324.8400
Email: KStetsko@perkinscoie.com

Nicola Menaldo
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Email: NMenaldo@perkinscoie.com

**Certificate of Compliance**

This Motion to Dismiss Complaint and Memorandum of Law complies with the type volume limitations of Local Rule 7.1(B)(4) because it contains 6,518 words.

s/ Samuel Wilson

**CERTIFICATE OF SERVICE**

I certify that on May 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CMECF system which will send notification of such filing to the following:

Andrew Stuckart
LUCIE BOUGHER & ASSOCIATES
202 N Lafayette St
Macomb, IL 61455

David W Hall
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, FL 33131

Frank S Hedin
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, FL 33131

Joshua D Arisohn
BURSOR & FISHER PA
888 Seventh Avenue
New York, NY 10019

Scott A Bursor
BURSOR & FISHER PA
888 Seventh Avenue
New York, NY 10019

I further certify that I have mailed by the United States Postal Service the document to the following non CMECF participants: None.

*s/Bobbie Wilson*

Bobbie Wilson
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
bwilson@perkinscoie.com
(415) 344-7000