E-FILED
Monday, 02 August, 2021 08:17:43 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| H.K. and J.C., through their father and legal guardian CLINTON FARWELL, and M.W., through her mother and legal guardian ELIZABETH WHITEHEAD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | No. 1:21-cv-01122-SLD-JEH<br><br>Chief Judge Sara Darrow<br><br>**Oral Argument Requested** |

**GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

- A. Google Workspace for Education ..... 2
- B. The Children's Online Privacy Protection Act ..... 3
- C. The Student Online Personal Protection Act ..... 5
- D. The Biometric Information Privacy Act ..... 6
- E. Summary of Plaintiffs' Allegations ..... 7

III. ARGUMENT ..... 8

- A. COPPA Preempts Plaintiff H.K.'s Claim ..... 8
  - 1. COPPA expressly preempts H.K.'s BIPA claim. ..... 8
  - 2. COPPA implicitly preempts H.K.'s claim. ..... 11
- B. All Plaintiffs' Causes of Action Fail Under SOPPA ..... 12
  - 1. SOPPA, which is more recent and specific to the alleged conduct, precludes the application of BIPA. ..... 13
  - 2. Applying BIPA to the conduct alleged would interfere with Illinois' express intent to encourage educational technology in the classroom. ..... 16
- C. Plaintiffs Fail to Plead Facts Stating a Claim Under BIPA ..... 18

IV. CONCLUSION ..... 22

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ....................3

*Bowes v. City of Chicago*,
3 Ill.2d 175 (1954) ....................16, 17

*Bridgestone/Firestone, Inc. v. Aldridge*,
179 Ill. 2d 141 (1997) ....................16, 17

*Brock v. Anderson Rd. Ass'n*,
287 Ill. App. 3d 16 (1997) ....................14, 15

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ....................8

*Carmean v. Bozzuto Mgmt. Co.*,
No. 20-C-5294, 2021 WL 2433649 (N.D. Ill. June 15, 2021)....................11

*Cothron v. White Castle Sys., Inc.*,
467 F. Supp. 3d 604 (N.D. Ill. 2020) ....................20

*Cothron v. White Castle Sys., Inc.*,
No. 20-3203 (Nov. 9, 2020)....................20

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)....................8

*Eads v. Heritage Enterprises, Inc.*,
325 Ill. App. 3d 129 (2001) ....................15

*Effex Cap., LLC v. Nat'l Futures Ass'n*,
933 F.3d 882 (7th Cir. 2019) ....................9

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992)....................8

*Goplin v. WeConnect, Inc.*,
893 F.3d 488 (7th Cir. 2018) ....................23

*Healy v. Beer Institute*,
491 U.S. 324 (1989)....................23

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ....................20, 23

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Hernon v. E.W. Corrigan Const. Co.*,
149 Ill. 2d 190 (1992) ....................................14

*Hubbard v. Google LLC*,
No. 19-cv-07016, 2020 WL 7495084 (N.D. Cal. Dec. 21, 2020)....................4, 9, 11, 12

*Hubbard v. Google LLC*,
No. 19-CV-07016-BLF, 2021 WL 2711748 (N.D. Cal. July 1, 2021)....................11, 12

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................................21

*Int'l Paper Co. v. Ouellette*,
479 U.S. 481 (1987)....................................12

*Israel Aircraft Indus. Ltd. v. Sanwa Bus. Credit Corp.*,
16 F.3d 198 (7th Cir. 1994) ....................................17

*Manigault-Johnson v. Google, Inc.*,
No. 18-cv-1032, 2019 WL 3006646 (D.S.C. Mar. 32, 2019)....................................9

*Marion v. Ring Container Techs., LLC*,
No. 19-L-89, Appeal No. 3-20-0184 (3d Dist. July 21, 2020) ....................................20

*Miller v. Sw. Airlines Co.*,
926 F.3d 898 (7th Cir. 2019) ....................................11

*Monroy v. Shutterfly, Inc.*,
No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)....................................23

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ....................................22

*Perez v. Nidek Co.*,
711 F.3d 1109 (9th Cir. 2013) ....................................12

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
136 S. Ct. 1938 (2016)....................................9

*Rivera v. Google, Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2018) ....................................21

*Roark v. Macoupin Creek Drainage Dist.*,
316 Ill. App. 3d 835 (2000) ....................................15

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Robertson v. Hostmark Hosp. Grp., Inc.*,
Case No. 18-CH-5194, slip op. (Cir. Ct. Cook Cnty., Jan. 27, 2020)....................................20

*Saccameno v. Ocwen Loan Servicing, LLC*,
372 F. Supp. 3d 609 (N.D. Ill. 2019) ........................................................................3

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
950 F.3d 911 (7th Cir. 2020) ..........................................................................12, 20

*Smith v. Top Die Casting Co.*,
No. 2019-L-248, slip op. (Cir. Ct. Winnebago Cnty., Mar. 12, 2020) ..................................20

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ..........................................................................22, 23

*Tims v. Black Horse Carriers, Inc.*,
No. 19-CH-03522, Appeal No. 1-20-0563 (1st Dist. Apr. 23, 2020) ....................................20

*Tosado v. Miller*,
188 Ill. 2d 186 (1999) ..................................................................................15

*Umland v. PLANCO Fin. Servs., Inc.*,
542 F.3d 59 (3d Cir. 2008)...............................................................................12

*United States ex rel. John v. Hastert*,
82 F. Supp. 3d 750 (N.D. Ill. 2015) ....................................................................19

*Watson v. Legacy Healthcare Fin. Servs., LLC*,
No. 19-CH-3425, slip op. (Cir. Ct. Cook Cnty., June 10, 2020) ..........................................20

*Zimmer v. Vill. of Willowbrook*,
242 Ill. App. 3d 437 (1993) ..............................................................................14

**FEDERAL STATUTES**

Children's Online Privacy Protection Act, 15 U.S.C. § 6501, *et seq.* ................................. passim

Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g..................................16

Labor Management Relations Act, 29 U.S.C. § 141, *et seq.* .......................................................11

Railway Labor Act, 45 U.S.C. § 151, *et seq.*..........................................................................11

**ILLINOIS STATUTES**

The Schools Code, 105 ILCS 5/1-1, *et seq.* ........................................................................6, 18

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Illinois School Student Records Act, 105 ILCS 10/1, *et seq.* ....................16

The Student Online Personal Protection Act, 105 ILCS 85/1, *et seq.* .................... passim

Biometric Information Privacy Protection Act, 740 ILCS 14/1, *et seq.*. .................... passim

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ....................6

**RULES**

Fed. R. Civ. P. 12(b)(6)....................1, 8

Local Rule 7.1(A)(2)....................2

**REGULATIONS**

The Children's Online Privacy Protection Rule, 16 C.F.R. § 312.1, *et seq.*.................... passim

64 Fed. Reg. 59888-01, (Nov. 3, 1999) ....................9, 13

**OTHER AUTHORITIES**

Christine S. Wilson, *A Defining Moment for Privacy: The Time is Ripe for Federal Privacy Legislation* 15 (Comm'r Fed. Trade. Comm'n, Remarks at the Future of Privacy Forum, Feb. 6, 2020)....................4

Fed. Trade Comm'n, *Complying with COPPA: Frequently Asked Questions*, FTC.GOV (July 2020), https://www.ftc.gov/tips-advice/business-center/guidance/complying-coppa-frequently-asked-questions-0#N.%20COPPA%20AND%20SCHOOLS (last visited July 29, 2021) ....................4, 5

H. 100 Gen. Assemb. Reg. Sess. 58 (Ill. 2017) ....................17

Lisa Weintraub Schifferle, *COPPA Guidance for Ed Tech Companies and Schools during the Coronavirus*, FTC.GOV (Apr. 9, 2020), https://www.ftc.gov/news-events/blogs/business-blog/2020/04/coppa-guidance-ed-tech-companies-schools-during-coronavirus ....................5

**MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW**

Under Federal Rule of Civil Procedure 12(b)(6), Defendant Google LLC hereby moves the Court for an order dismissing the First Amended Complaint ("FAC") of plaintiffs H.K. and J.C., represented by their father, Clinton Farwell, and plaintiff M.W., represented by her mother Elizabeth Whitehead ("Plaintiffs"). This Motion is based on the Memorandum of Law herein; the Declaration of Samuel Wilson ("Wilson Decl.") and the Exhibits attached thereto, which are incorporated by reference in the FAC or are subject to judicial notice; the pleadings and papers on file; any argument and evidence to be presented at the hearing on this Motion; and any other matters that may properly come before the Court.

## I. INTRODUCTION

This action should be dismissed. Plaintiffs and their counsel seek to leverage the private right of action and generous liquidated damages available under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*., to sue Google for allegedly collecting their biometrics through educational technology that Google provides to their schools. Plaintiffs' BIPA claim fails for multiple independent reasons, each of which requires dismissal.

***First***, the online collection of personal information from children under the age of 13, such as Plaintiff H.K., is federally regulated by the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501, *et seq*. COPPA expressly preempts state laws, including BIPA, that treat the same conduct differently than COPPA does. COPPA also implicitly preempts BIPA because allowing Plaintiffs to privately enforce their BIPA claim would upset the carefully balanced enforcement framework enacted by Congress.

***Second***, the Illinois Student Online Personal Protection Act ("SOPPA") 105 ILCS 85/1, *et seq*., governs the collection, use, and protection of personal data, including biometric data,

obtained from students in kindergarten through 12th grade ("K through 12"). SOPPA does not provide a private right of action and instead grants the Illinois Attorney General the authority to take appropriate action under the Act. Because the conduct Plaintiffs allege falls within the scope of SOPPA, which more specifically regulates Google's conduct than BIPA, it is not up to Plaintiffs to pursue any alleged violations. Moreover, allowing Plaintiffs' claim to proceed would run afoul the public policy of Illinois to promote educational technology by centralizing its regulation, and would lead to unworkable results.

***Third***, the FAC fails to set forth sufficient facts to render Plaintiffs' allegations plausible. Plaintiffs do not allege any facts that plausibly suggest that the data that Google collects through the software applications constitutes Biometric Data[1] within the meaning of BIPA or that Google maintains a "vast database" of student identities to which it ties that data. *See, e.g.*, FAC ¶ 39.

The FAC should be dismissed in its entirety. Pursuant to Local Rule 7.1(A)(2), Google requests oral argument to address the legal issues raised in this Motion.

## II. BACKGROUND

### A. Google Workspace for Education

Some schools in Illinois offer students Google Chromebook laptops for use at school or for remote learning. FAC ¶¶ 26, 37-38. Schools can use these Chromebooks with a suite of Google software applications called Google Workspace for Education ("GWFE").[2] GWFE includes word processing and collaboration software such as Classroom (assignment tracking), Docs (word processing), Groups (communication and collaboration), Sheets (spreadsheets), and Meet/Chat (audio and video conferencing) (formerly called Talk and Hangouts). *Id.*; *see also*

[1] For convenience in this motion, Google uses "Biometric Data" to refer to "biometric information" and "biometric identifiers" as defined by BIPA. 740 ILCS 14/10.
[2] In the FAC, Plaintiffs refer to GWFE by its former name, G Suite for Education.

Wilson Decl., Ex. A at 1.[3] These software applications allow teachers and students to collaborate on, share, send, and receive assignments digitally and remotely. *See* FAC ¶¶ 26, 38; Ex. A at 1-2. Google does not serve ads in these GWFE applications or in Google Search when K through 12 students are logged in with their GWFE accounts. Ex. A at 2. Like most laptops, Chromebooks are equipped with cameras and microphones. FAC ¶ 38. The video conferencing features of the GWFE Meet application utilize both the cameras and microphones to enable students and teachers to hear and see each other in real time. *See* FAC ¶¶ 37-38; Ex. A at 1.

Google notifies schools that use of GWFE is subject to COPPA. Ex. A at 2. Google contractually requires that schools using GWFE obtain parental consent for its use. *Id.*

**B. The Children's Online Privacy Protection Act**

Congress enacted COPPA in 1998 to enhance parental control over children's online activities and protect children's privacy. *See* 15 U.S.C. §§ 6501, *et seq*. COPPA and its implementing regulation (the "COPPA Rule") promulgated by the Federal Trade Commission ("FTC") create a detailed regulatory and remedial scheme governing the collection and use of personal information about minors younger than 13. *See id.* §§ 6501-6502; 16 C.F.R. § 312.1, *et seq.* They require the operators of websites and other online services directed to children to, among other things, post a publicly available policy providing information about their practices regarding the collection of personal information from children, provide notice of those practices to parents prior to collection, obtain verifiable parental consent, and delete any collected personal information in a timely manner. 16 C.F.R. §§ 312.2, 312.4, 312.5, 312.10.

---

[3] Plaintiffs cite Ex. A in the FAC. *See* FAC ¶ 27, n.8. It is thus incorporated by reference because it is "referred to in the plaintiff[s'] complaint and [is] central to [their] claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Additionally, it is subject to judicial notice because it is hosted on Google's website and its authenticity is not in dispute. Wilson Decl. ¶¶ 2-3; *see, e.g.*, *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 632 n.13 (N.D. Ill. 2019).

Congress placed the enforcement of this regime solely in the hands of the government and does not grant a private right of action. *See* 15 U.S.C. §§ 6502-6205. It also expressly preempts inconsistent state laws:

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

15 U.S.C. § 6502(d).

The FTC is the driver of the COPPA regime, operating as both rule maker and lead enforcer. 15 U.S.C. §§ 6502(b)-(c) (FTC to issue implementing regulations); *id.* § 6504(a)-(b) (states must give notice to the FTC of any action, and the FTC has the right to intervene in state action); *see also Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 630 (N.D. Ill. 2020) ("*Hubbard I*") ("[T]here is a detailed remedial scheme in [COPPA], as referenced by the preemption clause, giving enforcement authority primarily to the FTC and carving out a cooperative role for state attorneys general."). This framework allows "expert agencies" "to establish a sound and consistent national policy." *See* Christine S. Wilson, *A Defining Moment for Privacy: The Time is Ripe for Federal Privacy Legislation* 15 (Comm'r Fed. Trade. Comm'n, Remarks at the Future of Privacy Forum, Feb. 6, 2020), https://www.ftc.gov/system/files/documents/public_statements/1566337/commissioner_wilson_privacy_forum_speech_02-06-2020.pdf.

The FTC has made clear that COPPA applies in schools and has issued guidance specifying how schools may provide notice and obtain consent on parents' behalf. Fed. Trade Comm'n, Complying with COPPA: Frequently Asked Questions ("COPPA FAQ") N.1, FTC.GOV (July 2020), https://www.ftc.gov/tips-advice/business-center/guidance/complying-coppa-frequently-asked-questions-0#N.%20COPPA%20AND%20SCHOOLS. This guidance specifies that schools that contract with third-party online operators "may act as the parent's

agent and can consent under COPPA to the collection of kids' information on the parent's behalf." *Id.*

In April of 2020, as schools across the nation moved to remote learning, the FTC "stress[ed] that COPPA is not a barrier to schools providing robust remote learning opportunities through ed tech services" and reiterated its guidance that "schools can consent on behalf of parents to the collection of student personal information." Lisa Weintraub Schifferle, *COPPA Guidance for Ed Tech Companies and Schools during the Coronavirus*, FTC.GOV (Apr. 9, 2020), https://www.ftc.gov/news-events/blogs/business-blog/2020/04/coppa-guidance-ed-tech-companies-schools-during-coronavirus.

**C. The Student Online Personal Protection Act**

In 2017, the Illinois legislature enacted SOPPA "to ensure that student data will be protected when it is collected by educational technology companies," while also recognizing the "beneficial online services and other technologies" provided by those companies. 105 ILCS 85/3. SOPPA protects personally identifiable information, including "biometric information," that K through 12 students in Illinois provide to the operators of educational technologies and services ("Covered Information"). *Id.* § 5. Operators must publicly disclose material information about the collection, use, and disclosure of Covered Information, delete Covered Information when it is no longer needed, and enter into written, publicly accessible agreements with schools that provide notice of the types of Covered Information collected, the authorized purpose for the collection, and the operator's commitment to delete the Covered Information when it is no longer needed for the purpose for which it was collected. *Id.* § 15(2)-(4). SOPPA also prohibits operators from using Covered Information to target advertisements or create profiles of students, and it prohibits selling or disclosing Covered Information except in certain limited circumstances. *Id.* § 10(1)-(4).

SOPPA directs operators to enter agreements with schools, not individual parents. *Id.* § 15(4). And like COPPA, SOPPA does not provide for a private right of action. SOPPA instead authorizes the state Attorney General to "take appropriate action under the Consumer Fraud and Deceptive Business Practices Act" in response to violations. *Id.* § 35.

SOPPA's passage reflects a broader policy of the Illinois legislature to promote, not hinder, the use of educational technology in the classroom, and to do so by centralizing its regulation within the state government. *See, e.g.*, 105 ILCS 5/2-3.118 (directing the State Superintendent of Education to promote the use of technology in the classroom); *Id.* § 10-20.74 (requiring school districts to submit annual reports concerning their use of educational technologies to the State Board of Education).

**D. The Biometric Information Privacy Act**

BIPA, enacted in 2008 after COPPA but before SOPPA, is intended to facilitate the responsible development and use of biometric technology. 740 ILCS 14/5. It imposes certain requirements for the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id*. § 5(g). BIPA defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and defines "biometric information" to mean "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. § 10.

Unlike SOPPA or the COPPA FAQs, BIPA does not contemplate how its provisions should be applied in the context of a classroom contracting with an internet computer service to provide educational technology. Instead, it broadly requires that a private entity "in possession of" Biometric Data "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying" the Biometric Data. *Id*. §

15(a). BIPA also provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" Biometric Data unless it first obtains "informed written consent" from the subject or the subject's "legally authorized representative." *Id*. §§ 10, 15(b).

"Any person aggrieved" by a violation of BIPA may bring a private right of action for actual damages or liquidated damages of $1,000 per violation (for negligent violations) or $5,000 per violation (for "intentional[]" or "reckless[]" violations), plus "reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses." *Id*. § 20(1)-(3). Over 1,100 BIPA lawsuits have been filed since 2015.

**E. Summary of Plaintiffs' Allegations**

Plaintiffs claim that Google violated BIPA by collecting Plaintiffs' Biometric Data through GWFE without first providing public notice of, and complying with, data retention and deletion policies or notifying Plaintiffs' parents of, and obtaining consent to, its collection practices. FAC ¶¶ 37-46. Specifically, Plaintiffs claim that Google recorded Plaintiffs' voices and "imaged their faces" when unspecified features of GWFE "required" them to use the Chromebook's microphone and camera. *Id.* ¶ 38. Then Google allegedly "extracted, collected, stored, and cataloged each of their 'voiceprints'" and "their 'scans of face geometry.'" *Id.* ¶ 39. Next, Plaintiffs contend that Google linked Plaintiffs' Biometric Data to "its vast database of personally identifying biometric data" in order to identify who was using its platform and also to "better train the functionality of the various features available on its platform." *Id.* ¶¶ 39-40. And finally, Plaintiffs claim that Google used Plaintiffs' voiceprints and scans of face geometry "to recognize Plaintiffs' gender, age, and location." *Id.* ¶ 41. Plaintiffs bring a single cause of action under BIPA, *id*. ¶¶ 49-59, that is premised on alleged violations of section 15(a), *id.* ¶ 61, and section 15(b), *id.* ¶¶ 58-60.

## III. ARGUMENT

### A. COPPA Preempts Plaintiff H.K.'s Claim

Plaintiff H.K. fails to state a claim for which relief can be granted because COPPA applies and unambiguously preempts state laws, such as BIPA.

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). "Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). Where a statute contains an express preemption clause, courts must "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016). Implied preemption arises "where state law would be an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 893 (7th Cir. 2019).

H.K.'s claim is both expressly and impliedly preempted by COPPA.

#### 1. COPPA expressly preempts H.K.'s BIPA claim.

COPPA's express preemption clause is robust and unambiguous:

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

15 U.S.C. § 6502(d). By its plain language, COPPA preemption applies if two conditions are met: (1) the conduct at issue is regulated by COPPA, and (2) the state law imposes liability that is different from how COPPA "treat[s]" that conduct. *Id.*; *see also Hubbard I*, 2020 WL 7495084, at *6; *Manigault-Johnson v. Google, LLC*, No. 18-cv-1032, 2019 WL 3006646, at *6

(D.S.C. Mar. 32, 2019) (reasoning that COPPA preempted a claim seeking to impose liability for conduct falling within its scope). Here, both conditions are met as to Plaintiff H.K., who is under the age of 13. FAC ¶ 9 (alleging she is in elementary school).

***First***, the alleged conduct at issue is regulated by COPPA. COPPA regulates (1) the collection of personal information (2) from children under the age of 13 (3) by online operators, including in schools. 15 U.S.C. §§ 6501(1), (2), 6502(a)(1); 64 Fed. Reg. 59888-01, 59903 (Nov. 3, 1999). The voice snippets, images, and related data that Plaintiffs allege Google collected through Chromebooks constitute "personal information" under COPPA. 16 C.F.R. § 312.2 (defining "personal information" to include all "individually identifiable information about an individual collected online" including a "photograph, video, or audio file where such file contains a child's image or voice"). H.K is younger than age 13. *See* FAC ¶ 9. And, as alleged, Google is an "operator of a website or online service directed to children." *See* FAC ¶ 26 (alleging that Google provides "a cloud-based service used by young students all across the country"); 15 U.S.C. § 6501(2) (defining "operator" as a person who operates "an online service" and "collects or maintains personal information from . . . the users of . . .[the] online service"); *id.* § 6501(10)(A) (defining "website or online service directed to children" as including the portion of online services targeted to children). The BIPA violation that H.K. alleges is therefore entirely encompassed within the scope of COPPA's regulatory framework.

***Second***, BIPA imposes liability that is different from how COPPA "treat[s]" that conduct under "this section." 15 U.S.C. § 6502(d). Plaintiffs contend that Google violated BIPA by failing to provide public notice of its policies relating to the retention and deletion of Biometric Data, FAC ¶ 61; failing to provide direct notice to their parents, FAC ¶ 60; and failing to obtain parental consent, FAC ¶ 59. But many of these BIPA requirements differ from the analogous

requirements for collecting and possessing personal information under COPPA. *Compare, e.g.*, 16 C.F.R. § 312.4(d) (requiring operators to "post a prominent and clearly labeled link to an online notice of its information practices with regard to children"), *with* 740 ILCS 14/15(a) (requiring only a "publicly available policy" (online or offline) that is not specific to children); *compare* 16 C.F.R. § 312.10 (allowing retention for "only as long as is reasonably necessary" and establishing deletion requirements), *with* 740 ILCS 14/15(a) (requiring permanent destruction within three years of the data subject's last interaction with the entity collecting the Biometric Data); *compare* COPPA FAQ N.1 (allowing online operators to provide notice to schools, rather than parents, in educational settings), *with* 740 ILCS 14/15(b)(1)-(2) (ambiguously requiring direct notice to data subjects or their "legally authorized representatives"); *compare* COPPA FAQ N.1 (allowing schools to act as parental agents and provide consent on behalf of parents), *with* 740 ILCS 14/15(b)(3) (failing to specify whether schools are "legally authorized representatives" entitled to consent on behalf of students).

In fact, the way that COPPA treats violations of its substantive provisions—through enforcement by the FTC and state attorneys general instead of through a private right of action, like BIPA—is itself sufficient to trigger COPPA's express preemption clause. *See Hubbard v. Google LLC*, No. 19-cv-07016, 2021 WL 2711748, at *4 (N.D. Cal. July 1, 2021) ("*Hubbard II*") ("Allowing private plaintiffs to bring suits for violations of conduct regulated by COPPA . . . is inconsistent with the treatment of COPPA violations as outlined in the COPPA statute."). This result is also consistent with multiple courts' application of other federal laws to preempt BIPA claims. *See, e.g.*, *Miller v. Sw. Airlines Co*., 926 F.3d 898, 904 (7th Cir. 2019) (finding BIPA preempted by Railway Labor Act); *Carmean v. Bozzuto Mgmt. Co*., No. 20-C-

5294, 2021 WL 2433649, at *4 (N.D. Ill. June 15, 2021) (finding BIPA preempted by Labor Management Relations Act).

Because COPPA and BIPA "treat" the alleged conduct giving rise to H.K.'s claim differently, COPPA expressly preempts her BIPA claim. *See Hubbard I*, 508 F. Supp. 3d at 631 ("[B]y the text of the preemption clause, state law claims predicted on COPPA violations are preempted . . . ."); *Hubbard II*, 2021 WL 2711748, at *4 ("[T]he plain text of the statute clearly indicates Congress's desire to expressly preempt Plaintiffs' state law claims."). Accordingly, H.K.'s claim should be dismissed with prejudice. *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 919 (7th Cir. 2020) (affirming dismissal with prejudice where "the defects in these cases cannot be corrected").

**2. COPPA implicitly preempts H.K.'s claim.**

COPPA also implicitly preempts H.K's claim because it interferes with COPPA's carefully built framework of flexible and informal regulation backed by federal and state enforcement. The enforcement scheme is "clear, detailed, and does not leave room for state laws to impose additional liability." *See Hubbard I*, 508 F. Supp. 3d at 630 . "A state law . . . is pre-empted if it interferes with the methods by which the federal statute was designed to reach [its] goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987). That the federal law and state law share the same "ultimate goal" is irrelevant to the preemption analysis. *See id.* Where a state law—including the enforcement mechanisms or remedies available thereunder—would interfere with a federal enforcement regime, that law is preempted. *See, e.g.*, *Perez v. Nidek Co*., 711 F.3d 1109, 1119 (9th Cir. 2013) ("[The plaintiff's] fraud by omission claim is impliedly preempted because it conflicts with the FDCA's enforcement scheme."); *Umland v. PLANCO Fin. Servs., Inc*., 542 F.3d 59, 65 (3d Cir. 2008) (state law claims preempted where they "interfere with the IRS's administrative scheme").

Here, allowing H.K to proceed with her claim would upend COPPA's comprehensive and intentional enforcement framework. The conduct giving rise to Plaintiffs' claim is entirely contained within COPPA's scope, so limiting enforcement to the FTC and state attorneys general—as Congress explicitly intended—is necessary to preserve the FTC's statutorily mandated obligation to promote self-regulation through incentives and its efforts to "provide guidance" to the industry "[t]o ensure effective implementation of" COPPA. *See* 15 U.S.C. 6503(b)(1); 64 Fed. Reg. 59888, 59903. Private enforcement of COPPA destroys any incentive for the industry to engage in self-regulation and deprives the FTC of its regulatory leverage. Private actions—brought outside of the FTC's supervision—interfere with the agency's ability to implement and enforce a uniform but dynamic policy protecting children's privacy online in the face of changing technology. Accordingly, COPPA implicitly preempts H.K.'s claim, and it should be dismissed with prejudice.

### B. All Plaintiffs' Causes of Action Fail Under SOPPA

For similar reasons, SOPPA precludes the claims of all three Plaintiffs. SOPPA regulates the conduct alleged in the FAC, imposing different requirements than those imposed under BIPA, and granting the Illinois Attorney General authority to take appropriate action under the Act, rather than providing a private right of action. As the more specific statute applicable to the collection of Biometric Data in a school setting, SOPPA—not BIPA—controls, and Plaintiffs' BIPA claim must be dismissed. A different conclusion would contradict Illinois' public policy of encouraging the use of technology in K through 12 classrooms and lead to unworkable results.

#### 1. SOPPA, which is more recent and more specific to the alleged conduct, precludes the application of BIPA.

It cannot be disputed that SOPPA applies to the conduct alleged here. Plaintiffs' central allegation is that Google obtained their Biometric Data through an educational technology

platform without first providing notice and obtaining consent. FAC ¶ 42. SOPPA addresses the collection of biometric information in K through 12 schools. It requires that educational technology operators that collect biometric information from students enter into written agreements with schools that address the types of Covered Information obtained, state the Covered Information will only be used for authorized purposes, and set requirements for the deletion of the Covered Information. 105 ILCS 85/15(4)(A), (C), (E). Plaintiffs additionally allege that Google failed to provide public notice of its data retention and deletion policies. FAC ¶ 43. SOPPA governs this too: SOPPA requires that written agreements entered between schools and operators be posted online or made available to the public in school offices. 105 ILCS 85/15(4)(F). Because both SOPPA and BIPA apply, but only BIPA provides a private right of action, the Court must determine which statute controls.

SOPPA was enacted more recently than BIPA, specifically for the purpose of regulating the conduct alleged. As a result, SOPPA—not BIPA—controls. Under Illinois law, "[w]here there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail." *Hernon v. E.W. Corrigan Const. Co.*, 149 Ill. 2d 190, 195 (1992) (quoting *Bowes v. City of Chicago*, 3 Ill. 2d 175, 205 (1954)). "[T]his is especially true where the specific provision was enacted more recently than the general provision." *Brock v. Anderson Rd. Ass'n*, 287 Ill. App. 3d 16, 22 (1997). And where two specific statutory provisions are at issue, courts "must decide which of these two statutory provisions is *more* specifically applicable to this case." *Zimmer v. Vill. of Willowbrook*, 242 Ill. App. 3d 437, 442 (1993) (emphasis in original).

To make this determination, "courts have typically looked to the nature of the plaintiff's action and the injury sustained" to determine the level of applicability. *Roark v. Macoupin Creek*

*Drainage Dist.*, 316 Ill. App. 3d 835, 842 (2000). More recently, courts have also "focus[ed] on the category of defendants." *See Tosado v. Miller*, 188 Ill. 2d 186, 195 (1999); *see also Eads v. Heritage Enters., Inc.*, 325 Ill. App. 3d 129, 135 (2001).

Under either test, SOPPA is the more specific statute. The nature of Plaintiffs' claim and the injury allegedly sustained aligns more closely with SOPPA. The action arises from allegations that Google, as the operator of educational technology, improperly obtained Plaintiffs' personal information while they used Google's educational technology for their schools. SOPPA was explicitly intended to regulate exactly this type of action. 105 ILCS 85/3 ("This Act is intended to ensure that student data will be protected when it is collected by educational technology companies."). In contrast, BIPA was enacted because "[a]n overwhelming majority of members of the public are weary of the use of biometrics when . . . tied to finances and other personal information," and are "deterred from partaking in biometric identifier-facilitated transactions." 740 ILCS 14/5 (d), (e). BIPA's purposes have little application in a school setting. And BIPA is intended to protect the public at large—"any person aggrieved" may bring a BIPA suit. *Id.* §§ 5, 20. SOPPA is focused only on students. Because Plaintiffs' claims arise from the allegedly improper collection of their Biometric Data while they were in school by an educational technology company, SOPPA is more specifically applicable to their claims. *See Eads*, 325 Ill. App. 3d at 136.

The same result holds when looking at the category of defendants. SOPPA is explicitly focused on regulating educational technology companies, like Google in this context. 105 ILCS 85/3 ("This Act is intended to ensure that student data will be protected when it is collected by educational technology companies."); *id.* § 10 ("Operator prohibitions"); *id.* § 15 ("Operator duties"). BIPA, by contrast, can impose liability on "any" nongovernmental individual, business

association, or "other group." 740 ILCS 14/10, 14/15. SOPPA is, unquestionably, the more specific statute in terms of the categories of defendants.

Finally, there is no indication that the Illinois legislature intended BIPA to operate as an additional requirement applicable to biometric information collected in the school context. Instead, the legislature twice specified, "Nothing in this Section shall be construed to limit the rights granted to parents and students under the Illinois School Student Records Act or the federal Family Educational Rights and Privacy Act of 1974." 105 ILCS 85/33(d); *see also id.* at § 30(9). Neither of these provisions reference BIPA. Illinois law makes clear that, "[w]here a[n] [Illinois] statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions." *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 152-53 (1997) (applying this principle to a section of a statute that specifically cross-referenced other sections of that statute). This rule of construction is only overcome "by a strong indication of legislative intent." *Id.* at 154. Had the Illinois legislature intended that SOPPA operate concurrently with BIPA, it would have said so. And there is no indication of legislative intent to allow students to sue educational technology companies for purported violations of BIPA.

Thus, as in *Bowes*, which addressed whether a later-enacted statute permitting the construction of a water filtration plant superseded a prior statute that required a permit to do so, SOPPA "is obviously an exception to" BIPA. *Bowes*, 3 Ill. 2d at 205. Because the legislature has given specific permission to educational technology companies to enter into agreements with schools for the collection of biometric information, Google is not required to obtain consent directly from students or parents to engage in the same conduct. *See id.* ("The legislature having given specific permission to the city to construct the water filtration . . . within the

jurisdiction . . . of the city, it is not required that the city obtain a permit" as required under a previously enacted statute.).

Because SOPPA governs the conduct at issue and SOPPA authorizes only the Attorney General to take action under the Act, Plaintiffs cannot bring claims under BIPA, which imposes remedies for alleged violations of SOPPA that are inconsistent with SOPPA's legislative design. *Cf. Israel Aircraft Indus. Ltd. v. Sanwa Bus. Credit Corp.*, 16 F.3d 198, 200 (7th Cir. 1994) ("Express provisions for . . . administrative enforcement . . . without a corresponding provision for private enforcement, generally establish that private enforcement is inappropriate."). Accordingly, Plaintiffs' BIPA claim must be dismissed.

**2. Applying BIPA to the conduct alleged would interfere with Illinois' express intent to encourage educational technology in the classroom.**

The Court should decline to apply BIPA for the additional reason that allowing BIPA actions in the school context would lead to unworkable results unintended by the legislature. *Bridgestone/Firestone*, 179 Ill. 2d at 149 ("It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect."). By enacting SOPPA, the legislature sought to "strike . . . [a] balance that allows us to use modern technology to educate our children while at the same time protect[ing] their privacy." H. 100 Gen. Assemb. Reg. Sess. 58 (Ill. 2017). Opening educational technology to the flood of BIPA class actions would put Google and other educational technology companies in impossible circumstances while doing little to protect students' privacy.

For example, because COPPA certainly preempts BIPA claims for students younger than age 13, allowing J.C. and M.W.'s BIPA claim to proceed would mean that the collection of Biometric Data from students under age 13 would be subject to the FTC's COPPA enforcement scheme, but in Illinois (and nowhere else) collection of the same data from students aged 13 and

older would be regulated by BIPA and subject to its private right of action. Unlike under COPPA, BIPA is silent as to whether providing notice and obtaining consent from schools, as opposed to parents, meets the statute's notice and consent provisions. *Compare* COPPA FAC N.1 *with* 740 ILCS 14/15(c); *but see* 105 ILCS 5/24–24, 34–84a (providing that schools act *in loco parentis* as to the education and discipline of students).[4] To avoid the potential of crippling liability imposed by BIPA's liquidated damages, educational technology providers would therefore be forced to obtain consent directly from parents of each student starting on their 13th birthday. But that is unworkable since, as Plaintiffs allege, educational technology providers do not maintain relationships with parents, but rather only with schools. FAC ¶ 26 ("Google provides its 'ChromeBook' laptops to . . . schools, . . . who in turn make these computing devices available for use by children who attend their schools."). At minimum, direct parental consent requirements would impede the kind of swift delivery of technology to students that proved invaluable during the COVID-19 pandemic. *See* Ex. B,[5] Kara Biernat, *Bushnell-Prairie City school district goes remote after positive COVID-19 test*, WGEM News (Sep. 1, 2020) (discussing how a positive COVID test forced Plaintiffs H.K. and J.C.'s school district to move to fully remote learning a little over a week after the school year began). At most, such requirements would create disincentives for providers to develop and deliver technology designed for the classroom.

---

[4] Google does not concede that BIPA's notice and consent requirements would require direct parental consent, as opposed to consent from schools. *See* 740 ILCS 14/15(b) (requiring notice to and consent from an individual's "legally authorized representative"). However, as this action illustrates, the ambiguity regarding how BIPA applies in the school context raises the spectre that educational technology companies will be caught in the crosshairs of BIPA class actions.

[5] Ex. B is subject to judicial notice because it is a news report of a matter of public record. *United States ex rel. John v. Hastert*, 82 F. Supp. 3d 750, 764 (N.D. Ill. 2015) (taking judicial notice of newspaper articles).

In enacting SOPPA, the Illinois legislature, like the FTC, recognized the unique circumstance of schools, which must have the ability to select technology for the classroom on behalf of students. And SOPPA's focus on the operator-school relationship carries over in other ways that BIPA does not. For example, SOPPA requires operators to delete a student's Covered Information upon the request of their parents. 105 ILCS 85/15(2), 85/27(g). And SOPPA, like the COPPA Rule, also allows parents to inspect Covered Information collected from their children. 105 ILCS 85/33(c)(1); 16 C.F.R. § 312.6. These protections arguably exceed those of BIPA, while recognizing the fact that the school must act as the intermediary between parents and educational technology providers.

Both SOPPA and BIPA protect Biometric Data privacy, but they call for contradictory enforcement mechanisms. SOPPA, as the more recent and more specific statute, controls. And allowing Plaintiffs' lawsuit to go forward would undermine Illinois's intent to promote education technologies and force educational technology companies into unworkable results. This flaw is fundamental to the FAC and cannot be remedied. The Court should dismiss the FAC with prejudice. *Sharif Pharmacy*, 950 F.3d at 919.

### C. Plaintiffs Fail to Plead Facts Stating a Claim Under BIPA

Even if the FAC was not barred by federal and Illinois statutes, it would still fail because it does not plausibly state a claim for relief under BIPA. The *only* concrete factual allegations supporting Plaintiffs' claim are that—unsurprisingly, following over a year of video conferences and remote learning—one or more applications in GWFE involved the use of the cameras and microphones on their Chromebooks.[6] FAC ¶ 37. Otherwise, the FAC merely restates BIPA's

---

[6] Plaintiffs do not even allege when Google supposedly first collected their Biometric Data—a significant omission because their claim may well be barred by the statute of limitations. Several trial courts have held that BIPA claims accrue with the first alleged collection. *See, e.g.*, Ex. C,

statutory language with a varnish of technospeak and speculates, with *no* factual grounding, about "vast database[s]" of Biometric Data. The facts alleged are insufficient to support an inference that Google collected Plaintiffs' Biometric Data and they do not support a claim under BIPA. *See, e.g.*, *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966, 969 (N.D. Ill. 2020) (dismissing BIPA section 15(a) and (b) claim where the plaintiff "repeatedly allege[d] that [the defendant] 'collected' his biometric data without alleging how, when, or any other factual detail," and dismissing BIPA section 15(d) "for [the] independent" reason that the plaintiff failed to allege facts that "triggered his suspicion" of improper disclosure). The allegations that Plaintiffs used the microphones and cameras on their Chromebooks are insufficient to infer that Google collected their Biometric Data. Plaintiffs must plead facts to support such an inference. *Cf. In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1158 (N.D. Cal. 2016) (the plaintiffs alleged that they identified individuals in uploaded photographs *and then* Facebook suggested that users tag the identified individuals in other uploaded photographs). But there are no facts supporting Plaintiffs' claim.

Rather than plead allegations that are plausible, Plaintiffs parrot the statutory text. They assert that Google collected their "voiceprints," *see* FAC ¶ 39, but they do not allege any facts supporting this legal conclusion, *see* 740 ILCS 14/10 ("'Biometric identifier' means a . . .

---

Order, *Watson v. Legacy Healthcare Fin. Servs., LLC*, No. 19-CH-3425, slip op. at 3 (Cir. Ct. Cook Cnty., June 10, 2020). That question is currently on appeal to the Seventh Circuit. *Cothron v. White Castle Sys., Inc.*, No. 20-3203 (7th Cir. Nov. 9, 2020). And while BIPA does not provide a statute of limitations, Illinois law provides that privacy tort claims fall within a one-year limitations period. *See* 735 ILCS 5/13-201. The question of BIPA's statute of limitations has been certified for appeal by the First and Third District Appellate Courts in *Tims v. Black Horse Carriers, Inc.*, No. 19-CH-03522, Appeal No. 1-20-0563 (1st Dist. Apr. 23, 2020), and in *Marion v. Ring Container Techs., LLC*, No. 19-L-89, Appeal No. 3-20-0184 (3d Dist. July 21, 2020). Google reserves the right to argue that Plaintiffs' claims are time-barred or to request that the Court stay the case pending these appeals.

voiceprint"). And Plaintiffs' contentions that Google "records the acoustic details and characteristics of their voices," FAC ¶ 30, and that GWFE "includ[ed] features . . . that required Plaintiffs to speak into the laptop's audio recording device," FAC ¶ 37, add no substance or plausibility to the allegation that Biometric Data is at issue. The FAC fails to explain how this alleged recording is any different from a normal audio recording of Plaintiffs' voices, which clearly does not trigger BIPA. *See Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1097 (N.D. Ill. 2018) ("record[ing] a person's voice without generating a voiceprint" is not a violation of BIPA).

Similarly, Plaintiffs baldly assert that Google collected their "scans of face geometry," FAC ¶ 39, but again, they merely copy and paste BIPA's text into the FAC, *see* 740 ILCS 14/10 ("'Biometric identifier' means a . . . scan of . . . face geometry."). Their assertion that Google "scans and images the geometry of their faces, including the contours of their faces and the distances between certain localized facial points, such as the distances between the eyes and noses and ears," FAC ¶ 30, layers jargon on top of the statutory language. But this allegation still lacks any supporting factual allegations to explain on what basis Plaintiffs plausibly believe this to be true. *See Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (dismissing section 15(d) claim as based on "speculative allegations" where the plaintiff "ha[d] not pleaded sufficient factual allegations that plausibly suggest that Kronos disclosed or distributed her data to a third party"). Without such allegations, Plaintiffs fail to allege how this supposed scanning and imaging turns mere photographs and video, *see* FAC ¶ 38 (describing features that used "the laptop's camera" to "image[] their faces") into actionable "scans of . . . face geometry," *see* 740 ILCS 14/10 ("Biometric identifiers do not include . . . photographs."). Plaintiffs need more than jargon to state a viable claim.

Next, Plaintiffs claim, without explanation, that Google maintains a "vast database" of Biometric Data to "track" schoolchildren. *See, e.g.*, FAC ¶¶ 31-32, 39-40. These allegations should be disregarded as conclusory for failing to "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). As to the alleged "vast database," Plaintiffs allege no facts that support an inference that this database exists. As to tracking, the document Plaintiffs incorporate by reference establishes that "there are no ads in G Suite for Education core services and [Google] do[es] not collect or use student data for advertising purposes or create advertising profiles." Ex. A at 2. Given this statement, it is not plausible that Google would "track" students in the manner alleged in the FAC. Plaintiffs' ominous allegations of "vast databases" and "tracking" require more to "hold together."[7] *Swanson*, 614 F.3d at 404; *see also Goplin v. WeConnect, Inc.*, 893 F.3d 488, 490-91 (7th Cir. 2018) (affidavit was "conclusory" when the party's "own website" undermined the conclusory statements in the affidavit).

Finally, Plaintiffs' assertions about Google Photos and FaceNet, FAC ¶ 24, do not support the allegations in the FAC. Plaintiffs fail to tie those disparate allegations to any other aspect of the FAC: Plaintiffs do not even allege that they used Google Photos within GWFE, or

---

[7] Plaintiffs allege that Google "match[es]" or "link[s]" their Biometric Data to their identity *after* Google allegedly collects the Biometric Data. *See* FAC ¶¶ 38-40. Even if Plaintiffs could allege facts rendering their BIPA claim plausible, this alleged timeline would mean that Google could not know the identity or location of any student before any voiceprint or face scan were created, and therefore, students in Illinois could not be excluded from the alleged collection of Biometric Data. Such a claim, if pled, would effectively apply BIPA beyond the borders of Illinois, in contravention to that state's legislature and the dormant commerce clause. *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017) ("BIPA does not apply extraterritorially."); *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989) (If "the practical effect of the regulation is to control conduct beyond the boundaries of the State," the dormant commerce clause renders it invalid.). Google reserves the right to raise these arguments at a later date if their claim proceeds.

that FaceNet was otherwise used in their GWFE accounts. *See* FAC ¶¶ 37-46 (describing GWFE services yet failing to mention any incorporation of Google Photos or use of FaceNet); Ex. A at 1 (Google Photos not listed as a GWFE application).

Like the complaints in *Heard*, the FAC consists only of legal conclusions and recitations of BIPA's text. The Court should dismiss Plaintiffs' claim for this reason too.

## IV. CONCLUSION

Google respectfully requests that the Court dismiss Plaintiffs' FAC.

Dated: August 2, 2021

Respectfully submitted,

By: s/ Bobbie Wilson

Bobbie Wilson, Lead Counsel
Sunita Bali
Samuel Wilson
PERKINS COIE LLP
505 Howard St., Suite 1000
San Francisco, CA 94015-3204
Telephone: 415.344.7000
Email: BWilson@perkinscoie.com
Email: SBali@perkinscoie.com
Email: SWilson@perkinscoie.com

Kathleen A. Stetsko
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: 312.324.8400
Email: KStetsko@perkinscoie.com

Nicola Menaldo
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Email: NMenaldo@perkinscoie.com

**Certificate of Compliance**

This Motion to Dismiss FAC and Memorandum of Law complies with the type volume limitations of Local Rule 7.1(B)(4) because it contains 6,856 words.

s/ Bobbie Wilson