E-FILED
Monday, 02 August, 2021 08:17:44 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT C

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION
GENERAL CHANCERY SECTION

| | |
|---|---|
| BRANDON WATSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEGACY HEALTHCARE FINANCIAL SERVICES, LLC d/b/a Legacy Healthcare; LINCOLN PARK SKILLED NURSING FACILITY, LLC d/b/a Warren Barr Lincoln Park a/k/a The Grove at Lincoln Park; and SOUTH LOOP SKILLED NURSING FACILITY, LLC d/b/a Warren Barr South Loop,<br><br>Defendants. | CASE NO. 19 CH 3425<br><br>CALENDAR 11 |

**ORDER**

This matter came before the Court on Defendants' 2-619 motion to dismiss the putative Class Action Complaint of Plaintiff Brandon Watson. For the reasons explained below, the motion is granted.

BACKGROUND

Plaintiff was required to scan his hand to clock in and out of work at Defendants' nursing home facilities in Chicago.[1] Plaintiff worked as a Certified Nursing Assistant for Defendant Legacy Healthcare Financial Services, LLC ("Legacy"), which controls 26 nursing home facilities in Illinois. He worked at Defendant Lincoln Park Skilled Nursing Facility, LLC from December of 2012 through February of 2019, and at Defendant South Loop Skilled Nursing Facility, LLC from May through November of 2017.

Plaintiff filed his one-count Class Action Complaint on March 15, 2019, alleging that Defendants failed to properly disclose and obtain releases related to the collection, storage, and use of his biometric information, in violation of the Illinois Biometric Information Privacy Act ("BIPA"). He asks for statutory damages and an injunction under BIPA, individually and on behalf of a class of similarly-situated employees.

[1] The facts recited here are based upon the allegations of Plaintiff's Complaint, which are taken as true for purposes of this motion.

Defendants move to dismiss the Complaint under Section 2-619 of the Illinois Code of Civil Procedure, arguing that (1) Plaintiff's claims are time-barred; (2) Plaintiff's claims are preempted by the Illinois Workers Compensation Act; and (3) Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act.

APPLICABLE LAW

The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 367 (2003). Section 2-619(a)(5) provides for dismissal of a claim that "was not commenced within the time limited by law." Dismissal of a complaint pursuant to section 2-619(a)(9) is permitted where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." *Id.* The affirmative matter must negate the cause of action completely. *Id.* The trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party, and grant the motion only if the plaintiff can prove no set of facts that would support a cause of action. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997).

ANALYSIS

(1) Statute of Limitations

Defendants argue that Plaintiff's claim is barred by the statute of limitations. BIPA does not contain its own statute of limitations, so Defendants contend that the claim should be governed by the one-year statute applicable to what it calls the "most analogous common law claim"—invasion-of-privacy claims. That statute provides:

> Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.

735 ILCS 5/13-201.

This is not the applicable statute of limitations. BIPA's Section 15(d) could be construed to address "publication of matter violating the right of privacy" in prohibiting private entities from "disclos[ing], redisclos[ing], or otherwise disseminat[ing] a person's or a customer's biometric identifier or biometric information . . . ." 740 ILCS 14/15(d). However, in this case Plaintiff did not include a claim under Section 15(d). Rather, he claimed violations only of Sections 15(a) and (b), which require private entities to publicly provide retention schedules and guidelines for permanently destroying biometric information, and to make disclosures and obtain releases before collecting, storing, and using that information. Sections (a) and (b) are violated even if there is no publication. Therefore, the one-year statute does not apply.

Nor does the two-year statute of limitations for a "statutory penalty" (735 ILCS 5/13-202) apply to this case. BIPA's liquidated damages provision is remedial, not penal. In *Rosenbach v. Six Flags Entertainment Corp.*, the Illinois Supreme Court explained that the General Assembly enacted BIPA "to try to head off such problems before they occur," by enacting safeguards and "by subjecting private entities who fail to follow the statute's

requirements to substantial potential liability, including liquidated damages . . . ." 2019 IL 123186, ¶ 36. Like the Telephone Consumer Protection Act at issue in *Standard Mutual Ins. Co. v. Lay*, BIPA was "designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." 2013 IL 114617, ¶ 31.

The applicable statute of limitations is the five-year "catch-all" provision of 735 ILCS 5/13-205. It begins to run on the date the cause of action accrued. Defendants argue that, even if the five-year statute applies, Plaintiff's claim is time-barred because his cause of action accrued when Defendant scanned Plaintiff's hand on his *first* day of work—December 27, 2012. This suit was filed on March 15, 2019, more than six years later.

Plaintiff argues that each daily scan of his hand violated BIPA, so his *last* day of work—February 21, 2019—is the key date for limitations purposes. He argues that all scans in the five years before he filed the Complaint are actionable.

Generally, a cause of action accrues "when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003). Plaintiff argues that his claims are most analogous to wage claims, where each inadequate paycheck gives rise to a separate cause of action. The same cannot be said for each of Plaintiff's hand scans. As the Court in *Feltmeier* stated:

> [W]here there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury.

*Id.* at 79. (emphasis added).

In wage claims, damages flow from each inadequate paycheck. Additional damages accrue every time a paycheck is short. By contrast, Plaintiff's damages flow from the "single overt act" of the initial collection and storage of his biometric data. According to the Complaint, "From the start of Plaintiff's employment with Defendants in 2012," Defendants required him to have his "fingerprint and/or handprint collected and/or captured so that Defendants could store it and use it moving forward as an authentication method." (Cplt ¶18). The Complaint alleges that, *before* collecting Plaintiff's biometric information, Defendants did not provide Plaintiff with the required written notices and did not get his required consent. (Cplt ¶¶ 22, 23). While the Complaint alleges that Plaintiff had to scan his hand every day he worked, all his damages flowed from that initial act of collecting and storing Plaintiff's handprint in Defendants' computer system without first complying with the statute. Plaintiff's handprint was scanned and stored in Defendants' system on Day 1, allowing for authentication every time he signed in.

Plaintiff's cause of action accrued when his handprint allegedly was collected in violation of BIPA on his first day of work on December 27, 2012. Therefore, because Plaintiff filed his case on March 15, 2019, Plaintiff's claim is time-barred under the five-year statute of limitations.

This holding disposes of the case, but the Court will address Defendants' other arguments for the record.

(2) Preemption by Workers Compensation Act

Defendant argues that Plaintiff's claims are preempted by the exclusive remedy provisions of the Illinois Workers Compensation Act (the "Act"), 820 ILCS 305/5(a) and 11.

The Act "generally provides the exclusive means by which an employee can recover against an employer for a work related injury." *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶ 14. However, the employee can escape the Act's exclusivity provisions by establishing that the injury "(1) was not accidental; (2) did not arise from his [or her] employment; (3) was not received during the course of employment; or (4) was not compensable under the Act." *Id.*

Defendant argues that none of these exceptions apply in this case. In response, Plaintiff argues that exceptions (1) and (4) both apply—that the BIPA violations were not accidental and were not compensable under the Act.

To show that an injury was not accidental, "the employee must establish that his employer or co-employee acted deliberately and with specific intent to injure the employee." *Garland v. Morgan Stanley & Co.*, 2013 IL App (1st) 112121, ¶ 29. Plaintiff has made no such allegation in his Complaint, so he has not established that the injury was not accidental. To put it another way, the Complaint leaves open the possibility that the injury *was* accidental. Plaintiff implicitly acknowledges this when he alleges that he and the members of the class are entitled to recover "anywhere from $1,000 to $5,000 in statutory damages." (Cplt ¶ 57). Statutory damages of $1,000 may be recovered for ***negligent*** violations of BIPA (740 ILCS 14/20(1)), and caselaw has equated "negligent" with "accidental" under the Act. *See Senesac v. Employer's Vocational Res.*, 324 Ill. App. 3d 380, 392 (1st Dist. 2001).

Plaintiff also argues that exception (4) applies—the injury was not compensable under the Act. In *Folta,* the Illinois Supreme Court addressed how courts should analyze this exception.[2] Rejecting the argument that the plaintiff's mesothelioma was not compensable under the Act because recovery in his situation was barred by a statute of repose, the court focused on the *type of injury* alleged and whether the legislature intended such injuries to be within the scope of the Act. The court stated, "[W]hether an injury is compensable is related to whether the type of injury categorically fits within the purview of the Act." *Id.* at ¶ 23. Because the Act specifically addressed diseases caused by asbestos exposure (such as mesothelioma), the court found that the legislature contemplated that this type of disease would be within the scope of the Act, and it was therefore compensable under the Act. *Id.* at ¶¶ 25, 36.

The same cannot be said for injuries sustained from violations of BIPA. As the court stated in *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 30, BIPA "is a privacy rights law that applies inside and outside the workplace." By including in BIPA a provision for a private right of action in state or federal court (740 ILCS 14/20), the legislature showed it did not contemplate that BIPA claims would categorically fit within the purview of the Workers Compensation Act. Moreover, BIPA's definition of "written release" refers specifically to

---

[2] *Folta* was decided under both the Workers Compensation Act and the Workers' Occupational Diseases Act, 820 ILCS 310/5(a) and 11, which contain analogous exclusivity provisions.

releases executed by an employee as a condition of employment, further evidence that the legislature did not intend the Workers Compensation Act to preempt BIPA actions in the employment context. 740 ILCS 14/10.

The court holds that BIPA claims are not compensable under the Act. Therefore, BIPA claims fall within the fourth exception to the Act's exclusivity provisions. Plaintiff's BIPA claims are not preempted by the Act.

(3) Preemption by § 301 of Labor Management Relations Act

Finally, Defendant argues that this case should be dismissed because Section 301 of the Labor Management Relations Act (29 U.S.C. §185(a)) preempts Plaintiff's BIPA claim. That section provides:

> (a) Venue, amount, and citizenship. Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In analyzing this provision, the U.S. Supreme Court stated:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-06 (1988).

In Illinois, the First District Appellate Court explained the analysis as follows:

> Where a matter is purely a question of state law and is entirely independent of any understanding of the terms of a collective bargaining agreement, it may proceed as a state-law claim. By contrast, where the resolution of a state-law claim depends on an interpretation of the collective bargaining agreement, the claim will be preempted. Where claims are predicated on rights addressed by a collective bargaining agreement, and depend on the meaning of, or require interpretation of its terms, an action brought pursuant to state law will be preempted by federal labor laws. Defenses, as well as claims, must be considered in determining whether resolution of a state-law claim requires construing of the relevant collective bargaining agreement.

*Gelb v. Air Con Refrigeration & Heating, Inc.*, 356 Ill. App. 3d 686, 692-93 (1st Dist. 2005) (internal citations omitted).

With their motion, Defendants submitted sworn declarations attaching copies of the collective bargaining agreements ("CBAs") in effect at the Lincoln Park and South Loop nursing facilities where Plaintiff worked. The Lincoln Park CBA with SEIU provided, in relevant part:[3]

> Management of the Home, the control of the premises and the direction of the working force are vested exclusively in the Employer subject to the provisions of this Agreement. The right to manage includes . . . to determine and change starting times, quitting times and shifts, and the number of hours to be worked . . . to determine or change the methods and means by which its operations ought to be carried on; to set reasonable work standards . . . .

(Dfts' Mot., Choi Dec., Exh. A, p. 7).

The South Loop CBA with Local 743 in effect when Plaintiff worked at the South Loop facility in 2017 provided, in relevant part:

> [South Loop] has, retains, and shall continue to possess and exercise all management rights, functions, powers, privileges and authority inherent in the right to manage includ[ing] . . . the right to determine and change schedules, starting times, quitting times, and shifts, and the number of hours to be worked . . . to determine, modify, and enforce reasonable work standards, rules of conduct and regulation (including reasonable rules regarding . . . attendance, and employee honesty and integrity) . . . .

(Dfts' Mot., James Dec., Exh. A, p. 5).

Under *Lingle* and *Gelb*, the question is whether resolution of the BIPA claim in this case depends on an interpretation of the CBAs quoted above. Defendants argue that Plaintiff's claim "cannot possibly be resolved" without interpreting the governing CBAs. The Court disagrees. Resolution of this case is purely a question of state law—whether or not Defendants complied with BIPA by making the required written disclosures and getting the required written release before collecting, storing, and using Plaintiff's biometric information. Even if the CBAs allowed Defendants to set a rule requiring Plaintiff to clock in with his handprint—as part of "determining reasonable work standards"—the Court does not need to interpret the CBAs to decide if Defendants complied with BIPA's requirements. This is so even though the unions may be Plaintiff's "legally authorized representatives" under Section 15(b)(3) for purposes of signing the required release. The Court does not need to interpret the CBA to determine if the release was signed or not.

The CBAs are only tangentially related to this dispute, if at all. As the U.S. Supreme Court stated in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985), "[N]ot every dispute

[3] Defendants attached the CBA in effect between May 1, 2017 and April 30, 2020. The relevant CBA would be the one in effect when Plaintiff began work at Lincoln Park on December 27, 2012. Even if Defendants had attached the correct CBA, though, Defendants' preemption argument fails for the other reasons described herein.

concerning employment, or *tangentially involving* a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." (emphasis added). Preemption promotes uniformity of federal labor law, but preemption is required only if resolution of the dispute is "substantially dependent" on analysis of the terms of the CBA. *Id.* at 220.

As the court in *Gelb* directed, this Court has considered the defenses as well as the claims in this case. The Court notes that Defendants have raised no defenses that require an interpretation of the CBAs. Defendants do not assert that the unions received the required BIPA disclosures or signed BIPA releases on behalf of employees. Instead, they only point out that the broad management rights provisions of the CBAs allow them to set work standards. Deciding this case does not require the Court to interpret the CBAs.

In making our holding, the Court respectfully declines to follow the nonbinding Seventh Circuit case of *Miller v. Southwest Airlines*, 926 F. 3d 898 (7th Cir. 2019) and the Northern District of Illinois cases that followed it, *Gray v. Univ. of Chi. Med. Ctr., Inc.*, No. 19-cv-04229, 2019 U.S. Dist. LEXIS 229536 (N.D. Ill. Mar. 26, 2019) and *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2020 U.S. Dist. LEXIS 32577 (N.D. Ill. Feb. 26, 2020). Our case involves a motion to dismiss under Section 2-619 of the Illinois Rules of Civil Procedure, which should be granted "only if the plaintiff can prove no set of facts that would support a cause of action." *In re Chicago Flood Litigation,* 176 Ill. 2d 179, 189 (1997). Here, Plaintiff *could* prove a set of facts under which his claim was not preempted. Defendants did not meet their burden of proof on their 2-619 motion to dismiss argument based on Section 301 preemption.

## CONCLUSION

Defendants' Motion to Dismiss is granted under 2-619(a)(5) and Plaintiff's Complaint is dismissed with prejudice for failure to bring suit within five years after the cause of action accrued. This is a final order disposing of all matters.

ENTERED:

Judge Pamela McLean Meyerson

Judge Pamela McLean Meyerson

JUN 10 2020

Circuit Court – 2097