E-FILED
Friday, 05 November, 2021 07:37:41 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

H.K. and J.C., through their father and legal guardian CLINTON FARWELL, and M.W., through her mother and legal guardian ELIZABETH WHITEHEAD, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

No. 1:21-cv-01122-SLD-JEH

Chief Judge Sara Darrow

**Oral Argument Requested**

# GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. COPPA Preempts Plaintiff H.K.'s Claim .......... 2

B. Because SOPPA and Plaintiffs' Application of BIPA Irreconcilably Conflict, SOPPA—as the More Recent and More Specific Statute—Controls .......... 5

1. BIPA Conflicts with SOPPA .......... 6

2. SOPPA Is the More Recent and More Specific Statute, So It Controls Here, Not BIPA .......... 14

3. Plaintiffs' Other Arguments Regarding SOPPA's Application Also Fail 15

C. Plaintiffs Fail to State a Claim Under BIPA .......... 16

III. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abruzzo v. City of Park Ridge*,
231 Ill. 2d 324 (2008) .......... passim

*Barragan v. Casco Design Corp.*,
216 Ill. 2d 435 (2005) .......... 14

*Bridgestone/Firestone, Inc. v. Aldridge*,
179 Ill. 2d 141 (1997) .......... 12, 16

*Brock v. Anderson Rd. Ass'n*,
287 Ill. App. 3d 16 (1997) .......... 5, 15

*Bryant v. Compass Grp. USA, Inc.*,
958 F.3d 617 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020) .......... 8

*Eads v. Heritage Enters., Inc.*,
204 Ill. 2d 92 (2003) .......... 12

*Hernon v. E.W. Corrigan Constr. Co.*,
149 Ill. 2d 190 (1992) .......... 5

*Hubbard v. Google LLC (Hubbard I)*,
508 F. Supp. 3d 623 (2020) .......... 3, 4, 5

*Hubbard v. Google LLC (Hubbard II)*,
Case No. 19-cv-07016, 2021 WL 2711748 (N.D. Cal. July 1, 2021), *appeal filed sub nom. Jones v. Google LLC*, No. 21-16281 (9th Cir. Aug. 5, 2021) .......... 3, 5

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 18

*Israel Aircraft Indus. Ltd. v. Sanwa Bus. Credit Corp.*,
16 F.3d 198 (7th Cir. 1994) .......... 7

*Kalnel Gardens, LLC v. City of Los Angeles*,
3 Cal. App. 5th 927 (2016) .......... 16

*Miles v. Apex Marine Corp.*,
498 U.S. 19 (1990) .......... 12

**TABLE OF authorities (continued)**

**PAGE(S)**

*Moore v. Green*,
219 Ill. 2d 470 (2006) ....................9, 10, 11, 14

*New Mexico ex rel. Balderas v. Google, LLC*,
489 F. Supp. 3d 1254 (D.N.M. 2020), *appeal filed*, No. 20-2172 (10th Cir. Nov. 30, 2020) ....................17, 18

*New Mexico ex rel. Balderas v. Tiny Lab Productions*,
457 F. Supp. 3d 1103 (D.N.M. 2020) ....................3, 4

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................17

*Saccameno v. Ocwen Loan Servicing, LLC*,
372 F. Supp. 3d 609 (N.D. Ill. 2019) ....................19

*Skaperdas v. Country Cas. Ins. Co.*,
2015 IL 117021 ....................12

*Stewart v. Parkview Hosp.*,
940 F.3d 1013 (7th Cir. 2019) ....................7

*Stone v. Dep't of Emp. Sec. Bd. of Rev.*,
151 Ill. 2d 257 (1992) ....................10

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ....................18

*Tosada v. Miller*,
188 Ill. 2d 186 (1999) ....................14

*Zimmer v. Vill. of Willowbrook*,
242 Ill. App. 3d 437 (1993) ....................6, 15

**FEDERAL STATUTES**

Children's Online Privacy Protection Act, 15 U.S.C. § 6501, *et seq.* .................... passim

Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g....................11, 12

**TABLE OF authorities (continued)**

**PAGE(S)**

**ILLINOIS STATUTES**

The Schools Code, 105 ILCS 5/1-1, *et seq.* ....................13

Illinois School Student Records Act, 105 ILCS 10/5 ....................11, 12

Illinois Domestic Violence Act of 1986, 750 ILCS 60/305....................10, 11

Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/4-101, *et seq.* ....................10, 14

The Student Online Personal Protection Act, 105 ILCS 85/1, *et seq.* .................... passim

Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* .................... passim

105 ILCS 5/10-22.25b ....................7

**OTHER AUTHORITIES**

H. 100 Gen. Assemb. Reg. Sess. No. 58 (Ill. 2017) ....................13

## I. INTRODUCTION

Plaintiffs' Opposition confirms that the First Amended Complaint ("FAC") should be dismissed.

***First***, the federal Children's Online Privacy Protection Act, 15 U.S.C. § 6501–6506 ("COPPA") preempts the Biometric Information Privacy Act, 740 ILCS 14/1–14/99 ("BIPA"), both explicitly and implicitly. Plaintiffs ignore the multiple cases that confirm this and instead rely on a single case from New Mexico to argue that preemption does not apply. That case is distinguishable and, in fact, supports preemption here since it holds that no state law claims can lie where a plaintiff cannot state a claim under COPPA. Plaintiff H.K.'s claim requires dismissal on this basis alone.

***Second***, the Illinois Student Online Personal Protection Act, 105 ILCS 85/1–85/99 ("SOPPA") prohibits the application of BIPA to the alleged conduct because both SOPPA and BIPA regulate that conduct, the statutes are in conflict, and SOPPA is the more specific and recent of the two statutes. Plaintiffs' contention that the two statutes can apply simultaneously ignores the statutes' differing enforcement mechanisms and the practical realities of operating in a school environment. Because simultaneous enforcement of BIPA and SOPPA would contravene the intent of the General Assembly, Plaintiffs' BIPA claims must be dismissed for this reason too.

***Third***, the FAC does not plausibly allege that Google collected Plaintiffs' Biometric Data[1] in the first place. The lone substantive allegation on this point is that students were asked to speak and look into laptops, which leads to the plausible inference that the laptops were used

---

[1] Google uses "Biometric Data" to refer to "biometric information" and "biometric identifiers" as defined by BIPA. 740 ILCS 14/10.

for video-conferencing, not that Google was collecting Biometric Data. If Plaintiffs had used facial recognition or voice recognition technologies, their *third* complaint presumably would have included facts from which this inference could be made. It does not, and the FAC requires dismissal on this basis as well.

The Court should grant Google's Motion to Dismiss (the "Motion") and dismiss the FAC with prejudice.

## II. ARGUMENT

### A. COPPA Preempts Plaintiff H.K.'s Claim

COPPA expressly preempts Plaintiff H.K.'s claim because it triggers the two requirements of COPPA's preemption clause: (1) the claim arises from conduct that, as alleged, is regulated by COPPA, and (2) the private liability that H.K. seeks to impose under BIPA is "inconsistent with" COPPA's enforcement scheme. *See* 15 U.S.C. § 6502(d) ("No State or local government may impose any liability . . . in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section."); *id.* § 6504 (COPPA AG enforcement mechanism); 740 ILCS 14/20 (BIPA private right of action); Mot. at 8–11 (citing cases). In addition, COPPA implicitly preempts H.K.'s claim because it interferes with COPPA's carefully built framework of flexible and informal regulation backed by enforcement by the Federal Trade Commission ("FTC") and State Attorneys General. *See* Mot. at 11–12.

Plaintiffs admit that if COPPA preempts BIPA, H.K.'s claim must be dismissed. Opp. at 9 (explaining that if Google were to "prevail[] on this argument" then "it would dispose only of Plaintiff H.K.'s claims"). Plaintiffs do not dispute that Google's alleged conduct as to H.K. is governed by COPPA. *See* Opp. at 3–5 (omitting discussion of this element). The only question

then is whether applying BIPA to the conduct regulated by COPPA would be "inconsistent with the treatment of" the conduct under COPPA. *See* 15 U.S.C. § 6502(d) (preempting such state laws). The answer is yes: applying BIPA would be inconsistent, because BIPA is enforced through a private right of action, and COPPA is not. *See* Mot. at 9–11; *see also, e.g.*, *Hubbard v. Google LLC (Hubbard I)*, 508 F. Supp. 3d 623, 630 (2020) ("[A]llowing private plaintiffs to bring suits for violations of conduct regulated by COPPA, even styled in the form of state law claims, with no obligation to cooperate with the FTC [is] inconsistent with the treatment of COPPA violations as outlined in the COPPA statute."); *Hubbard v. Google LLC (Hubbard II)*, Case No. 19-cv-07016, 2021 WL 2711748, at *5 (N.D. Cal. July 1, 2021) ("[T]his alleged conduct [is] squarely covered, and preempted, by COPPA and its exclusive remedial scheme that vests enforcement authority in the FTC and state attorneys general."), *appeal filed sub nom. Jones v. Google LLC*, No. 21-16281 (9th Cir. Aug. 5, 2021).

In response, Plaintiffs rely entirely on a single case, *New Mexico ex rel. Balderas v. Tiny Lab Productions*, 457 F. Supp. 3d 1103 (D.N.M. 2020) (*Tiny Lab*), which they urge the Court to follow despite more analogous precedents identified in Google's Motion. *Tiny Lab* is easily distinguishable because it was brought by the New Mexico Attorney General, not by private litigants. *Id.* at 1110. The question of whether COPPA preempted state law based on differing enforcement mechanisms was therefore never even addressed. *See id.* This alone renders the *Tiny Lab* case inapposite. The court in the *Hubbard* cases reached this same conclusion. *See Hubbard I*, 508 F. Supp. 3d at 632 ("The Court finds *Tiny Lab* distinguishable from this case because Tiny Lab was brought by the New Mexico Attorney General, who can enforce violations of COPPA under the statute's remedial scheme."); *Hubbard II*, 2021 WL 2711748, at *5 n.1.

Moreover, a close read of *Tiny Lab* confirms that H.K.'s BIPA claim *should* be preempted because the FAC does not allege violations of COPPA. In *Tiny Lab*, the preemption question was: if a defendant is not liable under COPPA for certain conduct, can the FTC or a state Attorney General hold the defendant liable under state laws for that same conduct? *Tiny Lab*, 457 F. Supp. 3d at 1120–22. The court answered in the negative, finding that the Attorney General could not bring a state law claim against a group of defendants against whom the Attorney General had *not* stated a claim under COPPA, but the Attorney General could bring state law claims against a different group, for which he *had* stated a valid COPPA claim. *Id.* at 1112–1120. The reasoning was preemption: "[B]ecause Plaintiff's COPPA claim fails as to the [first defendants] . . . and because COPPA preempts state law that treats like conduct differently, Plaintiff's state law claims equally must fail[.]" *Id.* at 1121. Conversely, the state law claims could proceed against the second set of defendants because the COPPA claims against those defendants could proceed. *Id.* ("[T]o allow Plaintiff's state law claims against [the second defendants] to proceed would result in the imposition of liability only for conduct that violates COPPA.").

Accordingly, *Tiny Lab* does not change the conclusion that H.K.'s BIPA claim is preempted. It does not refute (or address) the *Hubbard* cases, which held that allowing private enforcement of COPPA-covered conduct would be inconsistent with COPPA's public enforcement scheme. And it confirms that preemption here is appropriate on the separate ground that, because Plaintiffs have not stated claims under COPPA, they likewise cannot state claims under BIPA.

Other than to urge the Court to follow *Tiny Lab*, Plaintiffs raise no substantive arguments against preemption of H.K.'s claim. Plaintiffs observe that the *Hubbard* cases involved

allegations that the defendant had disclosures about its data collection, whereas this case involves lack of disclosures, but they do not explain how that distinction matters, and in fact it does not matter. *See* Opp. at 5. The *Hubbard* holdings on COPPA preemption are unequivocal, and do not rely on whether Google did or did not disclose its information practices. *See Hubbard I*, 508 F. Supp. 3d at 630; *Hubbard II*, 2021 WL 2711748, at *5. The *Hubbard* holdings are also supported by *Manigault-Johnson v. Google, LLC*, which Plaintiffs do not address in their Opposition at all. Civil Action No. 18-cv-1032, 2019 WL 3006646, at *6 (D.S.C. Mar. 31, 2019) ("[I]t appears to the Court that Plaintiffs seek to use the vehicle of state law to privately enforce the provisions of COPPA, which Congress clearly intended to preclude when it included an express preemption clause in COPPA and assigned exclusive enforcement of COPPA to the Federal Trade Commission and state attorneys general.").

Plaintiffs cite no cases holding that private plaintiffs can bring state law claims for conduct regulated by COPPA. Because Plaintiffs present no reason why this Court should be the only court to diverge from the only other cases addressing this issue, H.K.'s claim must be dismissed with prejudice as preempted by COPPA.

### B. Because SOPPA and Plaintiffs' Application of BIPA Irreconcilably Conflict, SOPPA—as the More Recent and More Specific Statute—Controls

As explained in the Motion, "where there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail." *Hernon v. E.W. Corrigan Constr. Co*., 149 Ill. 2d 190, 195 (1992) (quoting *Bowes v. City of Chi.*, 3 Ill. 2d 175, 205 (1954)). "[T]his is especially true where the specific provision was enacted more recently than the general provision." *Brock v. Anderson Rd. Ass'n*, 287 Ill. App. 3d 16, 22 (1997). And where two specific statutory provisions are at issue, courts "must decide which of these two statutory provisions is

*more* specifically applicable to this case." *Zimmer v. Vill. of Willowbrook*, 242 Ill. App. 3d 437, 442 (1993) (emphasis in original).

Here, SOPPA and BIPA both regulate the collection of personal information, but SOPPA is specific to the school setting, and it is more recent, so it controls. *See* Mot. at 12–16. Additionally, the legislative intent behind SOPPA—which is the "foremost consideration" when evaluating the presence of a conflict—evinces no desire to allow private litigants to sue based on an alleged lack of parental consent. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). Rather, the General Assembly vested in schools the authority to select and implement classroom technology subject to robust protections for student privacy, and conferred on the Attorney General the power to enforce the law. Applying BIPA in schools would undermine these goals. For this reason too, SOPPA, not BIPA, controls. Mot. at 16–18. Because Plaintiffs have not, and cannot, allege claims under SOPPA, the FAC must be dismissed with prejudice.

**1. BIPA Conflicts with SOPPA**

Plaintiffs concede that when two statutes are in conflict, courts are required to apply the more specific statute over the general one. *See* Opp. at 7 (citing *Gillespie Cmty. Unit Sch. Dist. No. 7, Macoupin Cnty. v. Wight & Co.*, 2014 IL 115330, ¶ 41). They claim, however, that SOPPA and BIPA are not in fact in conflict, since Google could obtain consent from both schools and parents, so Google should just comply with both. Opp. 6–9. This narrow reading of "conflict" is factually incorrect and unsupported by the case law for four reasons, any one of which is enough to require the Court to analyze which of the two statutes should apply.

***First***, the liabilities imposed by BIPA and SOPPA are mutually exclusive, just as they are mutually exclusive as to BIPA and COPPA. BIPA allows private litigants like plaintiffs to bring class actions seeking statutory damages on behalf of a putative class. *See* 740 ILCS 14/20.

SOPPA can only be enforced by the Illinois Attorney General. 105 ILCS 85/35. These contradictory enforcement mechanisms of SOPPA and BIPA cannot be reconciled and require the Court to choose between the two. *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019) ("The express provision of one method of enforcing a substantive rule suggests that [the legislature] intended to preclude others.") (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)); *Israel Aircraft Indus. Ltd. v. Sanwa Bus. Credit Corp.*, 16 F.3d 198, 200 (7th Cir. 1994) ("Express provisions for . . . administrative enforcement . . . without a corresponding provision for private enforcement, generally establish that private enforcement is inappropriate."). In enacting SOPPA, the General Assembly chose to vest the Illinois Attorney General—not private plaintiffs—with the authority to respond to the unlawful collection and retention of student data by educational technology companies. Because Plaintiffs' application of BIPA would do the opposite, the two statutes conflict.

***Second***, applying BIPA's purported parental consent requirement directly conflicts with the General Assembly's judgement reflected in SOPPA *not* to require parental consent for the collection of Biometric Data.[2] SOPPA requires educational technology providers to obtain consent from schools instead of parents. 105 ILCS 85/15(4). SOPPA's consent regime reflects the state's interests in allowing schools to operate with consistent requirements for all students. *See, e.g.*, 105 ILCS 5/10-22.25b (authorizing schools to adopt uniform or dress codes). Requiring educational technology providers to additionally obtain consent directly from parents as

[2] As noted in the Motion, Google does not concede that BIPA's notice and consent requirements would require direct parental consent, as opposed to consent from schools. *See* 740 ILCS 14/15(b) (requiring notice to and consent from an individual's "legally authorized representative"). However, as this action illustrates, the ambiguity regarding how BIPA applies in the school context raises the spectre that educational technology companies will be caught in the crosshairs of BIPA class actions.

advocated for by Plaintiffs, *see* Opp. at 9, would undercut this interest. For example, it would create situations where the children of parents who are slow to return their "written releases" would not be able to participate in class. Either those children would be excluded from the lesson while the other students proceeded, or the entire class would be prevented from going forward with the lesson. This is especially concerning in light of COVID-19 when outbreaks forced many Illinois schools—including Plaintiffs H.K. and J.C.'s school—to transition immediately and without warning from in-classroom instruction to remote learning. *See* Ex. B. to Wilson Decl., ECF No. 16-3.[3]

***Third***, requiring educational technology providers to obtain duplicative consent is a conflict because it would produce absurd results. Collecting duplicative consent from both schools and parents would force educational technology providers to follow differing consent requirements that do not reference each other even though the requirements are both meant to protect student data. And, if an educational technology provider collecting Biometric Data were to obtain only one form of consent—which would still satisfy the statutes' shared intent, *compare* 105 ILCS 85/15(4)(A), (C), (E) (SOPPA's notice and consent requirements), *with* 740

[3] Any parental consent requirement would likely be borne, at least in part, by schools. As Plaintiffs concede, Google has no interactions with parents; Plaintiffs' schools serve as intermediaries between the two. FAC ¶ 26 ("Google provides its 'ChromeBook' laptops to . . . schools, . . . who in turn make these computing devices available for use by children who attend their schools."). And Plaintiffs' assertion that obtaining consent under BIPA is no different than a permission slip for a field trip trivializes BIPA's consent requirements. "[T]he informed-consent regime laid out in section 15(b) is the heart of BIPA." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020). Plaintiffs' application of BIPA would require Google to provide detailed and written notice to each parent and then, with the schools' assistance, obtain informed written consents executed by each student's parent before those students would be able to use features of GWFE that collect Biometric Data. 740 ILCS 14/15(b); *id.* 14/10.

ILCS 14/15(b) (BIPA's notice and consent requirements); *see also* Mot. at 12—it could still face liability for having violated the other statute. 740 ILCS 14/20; 105 ILCS 85/35.

This result is all the more absurd when considering the strong protections for student privacy already in place under SOPPA. For example, under SOPPA, if a parent does not want their child's data to be possessed by an educational technology provider, the provider must delete any collected data upon their request. 105 ILCS 85/15(2); *id.* 85/27(g). This right granted to parents under SOPPA exceeds the protections of BIPA, which offers consumers no rights to data deletion. Given the shared intent between SOPPA and BIPA's consent regimes, and parents' right under SOPPA to have their child's data deleted, it makes little sense to expose educational technology providers to massive private liability if they comply with SOPPA, but not BIPA.

***Fourth*****,** harmonizing BIPA and SOPPA would undermine the legislative intent of the General Assembly in enacting SOPPA. When a court finds itself confronted with two statutes that appear to conflict, it should attempt to construe them in harmony if such a construction is reasonable. *Abruzzo*, 231 Ill. 2d at 332. However, the Illinois Supreme Court has instructed that in such scenarios "[l]egislative intent remains the paramount consideration: Traditional rules of statutory construction are merely aids in determining legislative intent, and these rules must yield to such intent." *Moore v. Green*, 219 Ill. 2d 470, 479 (2006) (cleaned up); *see also Abruzzo*, 231 Ill. 2d at 332. Thus, the Illinois Supreme Court has held that when one statute conflicts with the legislative intent of the other, they are in irreconcilable conflict even if the provisions of each can technically be applied simultaneously. *See Abruzzo*, 231 Ill. 2d at 332; *Moore*, 219 Ill. 2d at 488.

Here, BIPA conflicts with the General Assembly's intent for SOPPA to comprehensively regulate the collection and possession of student data, while simultaneously promoting the use of educational technology in the classroom. Even if it were possible to reasonably construe SOPPA

and BIPA's consent and enforcement provisions in harmony, applying BIPA to the classroom cannot be reconciled with the legislative intent underlying SOPPA.

*Moore* is instructive. There, the Illinois Supreme Court considered whether the absolute immunity provided by the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/4-102, 4-107, or the limited immunity provided by the Illinois Domestic Violence Act of 1986, 750 ILCS 60/305, applied to claims that two Chicago police officers and the City of Chicago were willful and wanton in failing to assist a victim of domestic violence. *Moore*, 219 Ill. 2d at 474. The defendants argued that the two statutes could be harmonized because the Tort Immunity Act applied only to "local public entities and public employees" but not State employees, *id.* at 487 (quoting 745 ILCS 10/1-101.1, 1-206), while the Domestic Violence Act applied to any "law enforcement officer," *id.* (quoting 750 ILCS 60/305). According to the defendants, the Tort Immunity Act immunized municipalities and their law enforcement officers (like themselves) from tort claims and the Domestic Violence Act provided more limited immunity to the State police. *Id.* The Illinois Supreme Court rejected this construction, finding that the defendants had "miss[ed] the unmistakable legislative intent" of the Domestic Violence Act and that their construction would "pervert [its] broad purposes." *Id.* at 488. In enacting the Domestic Violence Act, the General Assembly "inten[ded] to encourage active intervention on the part of law enforcement officials in cases of intrafamily abuse." *Moore*, 219 Ill. 2d at 489. Thus, "[t]he legislature's intent in this regard is inconsistent with absolute immunity for municipalities under . . . the Tort Immunity Act." *Id.* at 489–90. *See also, e.g.*, *Abruzzo*, 231 Ill. 2d at 345(rejecting proposed harmonization of two statutes because the defendant's "construction is inconsistent with [one statute's] comprehensive scope"); *Stone v.*

*Dep't of Emp. Sec. Bd. of Rev*., 151 Ill. 2d 257, 265 (1992) ("[I]t would be contrary to the purpose of the Review Law for this court to [adopt the defendant's proposed harmonization].").

The same result should apply here. Like the statutes at issue in *Moore* and *Abruzzo*, the General Assembly intended for SOPPA to comprehensively govern the collection and possession of student data, not to operate in conjunction with other, differing laws. By its own terms, SOPPA is "inten[ded]" to "ensure that student data will be protected when it is collected by educational technology companies." 105 ILCS 85/3; *see Moore*, 219 Ill. 2d at 489 (noting that the Domestic Violence Act "begins with a broad statement of its purposes"). SOPPA not only imposes prohibitions and duties on educational technology companies, 105 ILCS 85/10, 85/15, it also imposes prohibitions and duties on schools and school boards, *id.* 85/26–28. For example, schools are prohibited from selling student data in any scenario or disclosing it except in limited circumstances. *Id.* 85/26. And schools must follow certain notification procedures in the event of a data breach. *Id.* 85/27(d). SOPPA also grants rights to students and parents, including the right to inspect and review the students' data and to request copies of their data. *Id.* 85/33. In other words, SOPPA "is an omnibus source of rules governing all aspects of" student data collection and possession. *Abruzzo*, 231 Ill. 2d at 345. "The broad purposes, comprehensive scheme, and entire structure of [SOPPA] indicate an intent for" it "to govern cases involving" the collection and possession of student data. *Abruzzo*, 231 Ill. 2d at 347. Plaintiffs' complaint intrudes into SOPPA's domain contrary to the General Assembly's intent.

This intent is also apparent in SOPPA's explicit direction that it does not "[s]upersede the federal Family Educational Rights and Privacy Act of 1974 ["FERPA"], the Illinois School Student Records Act ["SSRA"], or any rules adopted pursuant to those Acts." 105 ILCS 85/30(9); *see also id.* 85/33(d); Mot. at 15. The omission of BIPA from these provisions implies

that SOPPA supersedes BIPA to the extent that they overlap. *See Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 152–53 (1997).

Both of Plaintiffs' counterarguments on this point fail. First, Plaintiffs argue that interpreting SOPPA to supersede BIPA means that it must also supersede "every other statute in existence." Opp. at 10. This is a strawman and must be rejected. Clearly, SOPPA supersedes some statutes, or there would be no reason to preserve FERPA or the SSRA. SOPPA cannot be interpreted to render the FERPA and SSRA exceptions a nullity. *Eads v. Heritage Enters., Inc.*, 204 Ill. 2d 92, 105 (2003). Equally clear is that SOPPA has no effect on other statutes focusing on different subject areas altogether, such as statutes relating to criminal acts, corporate formation, or deforestation. What SOPPA supersedes are statutes or the application of statutes that pertain to student privacy and use of educational technology; SOPPA singled out FERPA and the SSRA because those statutes are in that sphere. *Compare, e.g.*, 105 ILCS 85/33(c)(1) (SOPPA allows the parents of students to inspect the student's information without restriction), *with* 105 ILCS 10/5 (SSRA does not permit parents to inspect confidential letters of recommendation).

Second, Plaintiffs argue that the General Assembly did not "ha[ve] BIPA in mind" when enacting sections 30(9) and 33(d). This too is a dead letter. "It is presumed that the legislature, in enacting various statutes, acts rationally and ***with full knowledge of all previous enactments***." *Skaperdas v. Country Cas. Ins. Co.*, 2015 IL 117021, ¶ 30 (emphasis added) (citation and quotation marks omitted); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). Additionally, SOPPA's enactment was debated in 2017 and its amendment was debated in 2019; at least six bills amending BIPA were introduced to the General Assembly in 2017 and at least

five were introduced in 2019. It is inconceivable that the General Assembly was not cognizant of BIPA.

Plaintiffs' application of BIPA would upset the "balance" the legislature explicitly sought in enacting SOPPA, which would "allow[] us to use modern technology to educate our children while at the same time protect[ing] their privacy." H. 100 Gen. Assemb. Reg. Sess. No. 58 (Ill. 2017); *see also* 105 ILCS 85/3 (recognizing that schools employ "a wide range of beneficial online services and other technologies to help students learn," and intending to "ensure . . . that the data may be used for beneficial purposes such as providing personalized learning and innovative educational technologies"); *see also* 105 ILCS 5/2-3.118 (directing the State Superintendent of Education to promote the use of technology in the classroom); *id.* § 10-20.74 (requiring school districts to submit annual reports concerning their use of educational technologies to the State Board of Education); Mot. at 5–6, 16.

Plaintiffs' Opposition ignores this aspect of the General Assembly's explicit intent—as they must—because this very lawsuit upsets that balance. By vesting the Illinois Attorney General with the authority to take action in response to alleged violations, SOPPA insulates educational technology companies from uncoordinated and meritless lawsuits, such as this one. *See infra* § II.C (explaining that the FAC rests entirely on just ***two*** concrete factual allegations: that Google Workspace for Education ("GWFE") "requires the children using [GWFE] [1] to speak into a microphone on the laptop . . . and [2] to look into a camera on the laptop," FAC ¶ 37, and arguing that those two facts do not support an inference that Google ever collected Plaintiffs' Biometric Data). If this suit moves forward, every single educational technology provider that has provided video conferencing technology to Illinois schools during the COVID-19 pandemic—or any other service that has any sort of audio or visual component—will be

vulnerable to class action lawsuits threatening BIPA's massive statutory damages. That would have a profound chilling effect on the use of educational technology in Illinois schools. There is simply no way to square Plaintiffs' application of BIPA to schools with the clear legislative intent behind SOPPA and the practical realities of how education is delivered in a modern world.

Contrary to Plaintiffs assertion that BIPA "complement[s]" SOPPA, the two statutes "vie for the same sphere" with respect to the collection of personal information from students in an educational setting. *Moore*, 219 Ill. 2d at 487; *see also Abruzzo*, 231 Ill. 2d at 344 ("In this case, both the Tort Immunity Act and the EMS Act immunity provisions apply to plaintiff's complaint. Thus, those statutes cannot be harmonized."). The direct conflict between BIPA and SOPPA requires the Court to choose between the two.

### 2. SOPPA Is the More Recent and More Specific Statute, So It Controls Here, Not BIPA

"[W]hen two statutes are in conflict, the more specific should take precedence over the more general and the more recently enacted statute should be applied over the earlier enacted statute." *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 451 (2005); *see also Abruzzo*, 231 Ill. 2d at 346; *Moore*, 219 Ill. 2d at 480. SOPPA, enacted in 2017, is more recent than BIPA, enacted in 2008. SOPPA is also more specific than BIPA when viewed through the lens of "the nature of the plaintiff's action and the injury sustained," which, here, is an action challenging Google's collection of Biometric Data from students in the educational context and alleged injuries sustained by students using educational technology products. *See Roark v. Macoupin Creek*, Drainage Dist., 316 Ill. App. 3d 835, 842 (2000) (applying nature of action and injury test). Additionally, SOPPA is more specific in terms of "the category of defendants" the two statutes regulate, since SOPPA regulates education technology providers, schools, and administrators,

whereas BIPA regulates all "private entities." *See Tosada v. Miller*, 188 Ill. 2d 186, 195 (1999) (applying "category of defendants" test); *see also generally* Mot. at 12–16 (applying both tests).

Plaintiffs do not dispute that BIPA is the more recent of the two statutes, and the recency of SOPPA heavily tilts the analysis in favor of applying SOPPA over BIPA. *See Brock*, 287 Ill. App. 3d at 22. Plaintiffs nevertheless argue that BIPA is more specific because it applies only to Biometric Data whereas SOPPA applies to all forms of personal information. *See* Opp. at 9-10. But SOPPA applies only to *student* personal information, whereas BIPA applies to Biometric Data of all "members of the public." *See* 740 ILCS 14/5. Thus, the pool of people aggrieved by a violation of SOPPA is much smaller than the pool of potential BIPA plaintiffs. Moreover, BIPA polices "any" private entity, 740 ILCS 14/10, 14/15, while SOPPA provisions govern educational technology companies, schools, and administrators. At root, SOPPA regulates "student data . . . when it is collected by educational technology companies," and Plaintiffs are students who allege that Google, as an educational technology company, collected their data. This renders SOPPA more specific in this case. *See Zimmer*, 242 Ill. App. 3d at 442 (holding that where two specific statutory provisions are at issue, courts "must decide which of these two statutory provisions is *more* specifically applicable to this case") (emphasis in original).

### 3. Plaintiffs' Other Arguments Regarding SOPPA's Application Also Fail

Plaintiffs contend that Google is improperly "recast[ing]" their BIPA claims as SOPPA claims. Opp. at 6. Nowhere in the Motion does Google argue that Plaintiffs have pled SOPPA claims. To the contrary, Google argues that BIPA conflicts with SOPPA's consent regime, enforcement method, and overall statutory intent, so SOPPA governs the alleged conduct instead of BIPA, requiring dismissal of Plaintiffs' BIPA claims. Mot. at 12–18.

Similarly, Google does not argue that SOPPA has "repeal[ed]" BIPA. Opp. at 11. Google relies on Illinois Supreme Court precedent to show that BIPA's omission from sections 30(9) and 33(d) indicates its exclusion. *Bridgestone/Firestone, Inc.*, 179 Ill. 2d at 152–53. Plaintiffs' cited California Court of Appeal case is both irrelevant in the face of controlling Illinois law and off point because it dealt with two statutes that could be harmonized. *Kalnel Gardens, LLC v. City of Los Angeles*, 3 Cal. App. 5th 927, 945 (2016) ("[W]e will not presume that the Legislature intended [for one statute to supersede the other] ***if we can harmonize the Mello Act with the Coastal Act***. . . . [W]e conclude they can be harmonized.") (emphasis added).

* * *

Because BIPA and SOPPA conflict and cannot be harmonized, while at the same time upholding the legislative intent behind SOPPA, SOPPA controls and Plaintiffs' BIPA claims must be dismissed.

**C. Plaintiffs Fail to State a Claim Under BIPA**

The FAC should be dismissed for the independent and important reason that it fails to allege facts that give rise to a plausible inference that Google actually collected Plaintiffs' Biometric Data. Having amended their complaint twice,[4] it must follow that Plaintiffs are *unable* to allege facts that would plausibly suggest collection of Biometric Data. Plaintiffs' opposition also confirms this. It points to three sources of allegations that would support their claim: (1) the statement in the complaint that Google instructed Plaintiffs to speak into their microphone and look into their camera (2) the fact that Google has been sued in a different state for collection of personal information from students, but not biometric data, and not in Illinois, and (3) the fact

[4] *See* ECF No. 11, Google's Motion to Dismiss Complaint, at 6–7 (describing similar complaint filed by Plaintiffs J.C. and H.K. and then voluntarily dismissed in the Northern District of California.).

that Google discloses in its *company-wide* privacy policy that it collects biometric information. None of these sources change the fact that the FAC does not plausibly allege that Google collected Plaintiffs' Biometric Data.

Plaintiffs contend that if Google does not use GWFE to collect the Biometric Data of students, then "[w]hy else ask students to 'speak into the recording device' on the ChromeBooks or 'to look into the ChromeBook's camera?'" Opp. at 13 (quoting FAC ¶ 37). As Google observed in the Motion (at 18), using the microphone and camera on a laptop is necessary to engage in video conferencing and remote learning. To the extent Plaintiffs suggest that recording or transmitting the faces or voices of individuals implicates Biometric Data, they are wrong as a matter of law. 740 ILCS 14/10 ("Biometric identifiers do not include . . . photographs[.]"); *see also, e.g.*, *Rivera v. Google Inc*., 238 F. Supp. 3d 1088, 1097 (N.D. Ill. 2017) ("[I]f Google simply captured and stored the photographs and did not measure and generate scans of face geometry, then there would be no violation of the [BIPA]. (The same is true of someone, say a journalist, who records a person's voice without generating a voiceprint.)"). Simply using a camera and microphone is not sufficient to trigger BIPA, especially when there are plausible reasons for doing so that do not involve the collection of Biometric Data.

Plaintiffs then cite another complaint from a different state that alleges Google violated COPPA by improperly collecting data through GWFE, but this complaint is not described in the FAC and also does not allege collection of Biometric Data or otherwise render Plaintiffs' allegations more plausible. *See* Opp. at 13 (citing Compl. ¶ 5, *New Mexico ex rel. Balderas v. Google*, *LLC*, No. 20-cv-00143 (D.N.M. Feb. 20, 2020), ECF No. 1). Indeed, the district court dismissed that complaint for failure to state a claim (not on jurisdictional grounds as mischaracterized by Plaintiffs, Opp at 13 n.1). *See New Mexico ex rel. Balderas v. Google, LLC*,

489 F. Supp. 3d 1254, 1264 (D.N.M. 2020) ("[T]he State's complaint fails to state a claim for relief that Google violated COPPA in relying on schools to serve as the parent's agent and/or to act as intermediaries between Google and parents in the notice and consent process."), *appeal filed*, No. 20-2172 (10th Cir. Nov. 30, 2020). Accordingly, this complaint does not support the inference that Google collects Biometric Data through GWFE or that Google fails to comply with legally required notice and consent requirements.

Plaintiffs' allegations that a separate product, Google Photos, uses facial recognition technology also does not support an inference that GWFE collected Plaintiffs' Biometric Data. Plaintiffs do not allege that they ever used Google Photos through GWFE or that GWFE uses the alleged facial recognition technology. *See also* FAC ¶¶ 37–46 (describing GWFE services yet failing to mention any incorporation of Google Photos or use of FaceNet); Ex. A at 1 (Google Photos not listed as a GWFE application). Those allegations certainly do not support Plaintiffs' speculation that Google uses Biometric Data to "identify and track" children. Opp. at 12 (quoting FAC ¶¶ 31, 32); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law."). That Google uses facial recognition technology with a different product, which is offered to a different set of users, does not plausibly lead to the inference that Google uses the Biometric Data of children to "identify and track" them. Opp. at 12. Unless and until Plaintiffs can raise factual allegations that bridge that gap, these allegations are insufficient to support their claims. *Cf. In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1158, 1171 (N.D. Cal. 2016) (the plaintiffs alleged that they identified individuals in uploaded photographs and then Facebook suggested that users tag the identified individuals in other uploaded photographs).

Finally, Plaintiffs turn to documents outside the FAC, but those documents do not show what Plaintiffs suggest. For example, Plaintiffs point to Google's general Privacy Policy, which is not specific to GWFE but rather applies to "all of the services offered by Google LLC and its affiliates, including YouTube, Android, and services offered on third-party sites, such as advertising services." Menaldo Decl., Ex. 1 at 18.[5] The Privacy Policy provides that Google may collect "[b]iometric information if you choose to provide it." *Id.* at 16. But this is merely duplicative of what is already alleged in the FAC, which is that *another* of Google's products involves the alleged collection of Biometric Information. FAC ¶ 24 (discussing Google Photos). Repeating the FAC's allegation that Google in some instances may collect Biometric Information does not render any more plausible that Google collects Biometric Information *through GWFE*. Plaintiffs also cite to the GWFE Privacy Notice,[6] but nothing in that document suggests that Google collects Biometric Data through GWFE. Plaintiffs would have the Court assume that the term "anything" necessarily incorporates Biometric Data, but the GWFE Privacy notice clarifies that it means things like "the user's name, email address, [] password . . . . secondary email address, phone number, [] address . . . . [and] emails that you write and receive while using Gmail or documents that you draft and store in Drive." Menaldo Decl., Ex. 2 at 3. Again, Plaintiffs are missing the factual allegations necessary to bridge the gap

---

[5] For the Court's convenience, a copy of the Privacy Policy is attached, as Exhibit 1, to the Declaration of Nicola Menaldo ("Menaldo Decl.") filed concurrently with this Reply. Google does not concede that the Privacy Policy is incorporated by reference into the FAC, but it is judicially noticeable because it "is hosted on Google's website and its authenticity is not in dispute." *See, e.g.*, *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 632 n.13 (N.D. Ill. 2019).

[6] A copy of the GWFE Privacy Notice is attached to the Declaration of Nicola Menaldo as Exhibit 2. Google does not concede that the GWFE Privacy Notice is incorporated by reference into the FAC, but it is judicially noticeable because it "is hosted on Google's website and its authenticity is not in dispute." *See, e.g.*, *Saccameno*, 372 F. Supp. 3d at 632 n.13.

between lawful conduct and the unlawful collection and retention of Biometric Data. Plaintiffs have simply failed to allege facts that plausibly state a claim for relief under BIPA.

**D. The Complaint Should be Dismissed With Prejudice**

The Court should deny Plaintiffs' request for leave to file a Second Amended Complaint. If the Court holds that COPPA preempts BIPA and SOPPA supersedes BIPA, no amendment can resuscitate Plaintiffs' BIPA claims. Moreover, in its original Motion to Dismiss, Google raised substantially the same arguments showing that Plaintiffs had failed to state a claim as it raises in this Motion. *Compare* Mot. at 18–21, *with* ECF No. 11 at 13–17. But when they amended their complaint, Plaintiffs made ***no*** substantive changes beyond adding M.W. as a plaintiff and stating that J.C. is older than 13—they did not even add the extrinsic documents they rely on in their Opposition. *See* Menaldo Decl., Ex. 3 (redline comparing Plaintiffs' original complaint against the FAC). Plaintiffs have already had one chance to fix their pleading deficiencies and they chose not to. The Court should dismiss this case with prejudice.

## III. CONCLUSION

For the reasons discussed above, Google respectfully requests that the Court grant the Motion and dismiss the FAC.

Dated: November 5, 2021

Respectfully submitted,

By: */s/ Nicola C. Menaldo*

Kathleen A. Stetsko
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: 312.324.8400
Email: KStetsko@perkinscoie.com

Nicola Menaldo
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Email: NMenaldo@perkinscoie.com

Bobbie Wilson, Lead Counsel
Sunita Bali
Samuel Wilson
PERKINS COIE LLP
505 Howard St., Suite 1000
San Francisco, CA 94015-3204
Telephone: 415.344.7000
Email: BWilson@perkinscoie.com
Email: SBali@perkinscoie.com
Email: SWilson@perkinscoie.com

**Certificate of Compliance**

This Reply in Support of Motion to Dismiss FAC and Memorandum of Law complies with the type volume limitations of Local Rule 7.1(B)(4) because it contains 6,815 words.

*s/ Nicola C. Menaldo*

**CERTIFICATE OF SERVICE**

I, Nicola C. Menaldo, certify that on November 5, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*s/ Nicola C. Menaldo*
Nicola C. Menaldo